UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:23-cv-61354

PROGRESSIVE           EXPRESS
INSURANCE COMPANY,

     Plaintiff,

vs.

RASIER-DC, LLC, a foreign limited
liability         company;        UBER
TECHNOLOGIES, INC., a foreign
corporation;       and       KARINA
MONASTERIO, individually,

     Defendants.

_____/

## **COMPLAINT FOR DECLARATORY JUDGMENT**

Progressive Express Insurance Company ("Progressive"), by and through its attorneys,

Morgan & Akins, PLLC, states by way of Complaint for Declaratory Judgment against

Defendants, Rasier-DC, LLC, UBER Technologies, Inc., and Karina Monasterio, as follows:

**Parties**

1.    Plaintiff, Progressive Express Insurance Company ("Progressive"), is a corporation

organized under the laws of Ohio and with its principal place of business located in Mayfield

Village, Cuyahoga County, Ohio.

2.    Defendant, Rasier-DC, LLC ("Rasier"), is a foreign limited liability company

organized under the laws of Delaware and with its principal place of business located in San

Francisco, San Francisco County, California. Rasier is a wholly owned subsidiary of UBER

Technologies, Inc. UBER is Rasier's sole member. UBER Technologies, Inc., is a foreign

corporation under the laws of Delaware and with its principal place of business located in San Francisco, San Francisco County, California.

3.      Defendant, UBER Technologies, Inc. ("UBER"), is a foreign corporation organized under the laws of Delaware and with its principal place of business located in San Francisco, San Francisco County, California.

4.      Defendant, Karina Monasterio ("Monasterio"), was and, at all times relevant to this action is, a resident and citizen of Hollywood, Broward County, Florida.

**Jurisdiction and Venue**

5.      This Court has subject matter jurisdiction over this instant action pursuant to 28 U.S.C. § 1332(a)(1), because diversity of citizenship exists between Progressive, on the one hand, and Defendants, on the other, and the amount in controversy, as determined by the monetary value of the claims presented exceeds $75,000.00.

6.       Venue is proper in this district as this is the judicial district in which a substantial part of the events giving rise to the claim occurred. *See* 28 U.S.C. 1391(b)(1).

**Florida's TNC Statute**

7.      On July 1, 2017, Florida's Transportation Network Company Statute ("TNC Statute"), Fla. Stat. § 627.748 went into effect.

8.      The TNC Statute obligated 'Transportation Network Companies,' to obtain and maintain certain insurance coverages for and on behalf of the TNC driver, addressing, among other situations, where the TNC driver was engaged in a prearranged ride.

9.      In situations in which a TNC driver was engaged in a prearranged ride, the TNC statute provides, in pertinent part, as follows:

> (7)      Transportation network company and tnc driver insurance requirements…

2

(c)     The following automobile insurance requirements apply while a participating TNC driver is engaged in a prearranged ride:

1.      Automobile insurance that provides:

a.      A primary automobile liability coverage of at least $1 million for death, bodily injury, and property damage;

b.      Personal injury protection benefits that meet the minimum coverage amounts required of a limousine under ss 627.730-627.7405; and

c.      Uninsured and underinsured vehicle coverage as required by s. 627.727.

Fla. Stat. §627.748(7)(c)(1).

**Florida's UM/UIM Statute**

10.     As reflected in the TNC Statute, the obligation to provide uninsured and underinsured vehicle coverage is determined by a separate statute, § 627.727. Fla. Stat. §627.748(7)(c)(1)(c.).

11.     Section 627.727 sets forth Florida's UM/UIM coverage requirements, generally, as well as the requirements incorporated into Florida's TNC statute, specifically.

12.     Section 627.727 imposes different obligations depending upon whether a specifically insured automobile is involved.

13.     Section 627.727(1) applies to specifically insured automobiles and provides, in pertinent part, as follows:

No motor vehicle liability insurance policy which provides bodily injury liability coverage shall be delivered or issued for delivery in this state with respect to any specifically insured or identified motor vehicle registered or principally garaged in this state unless uninsured motor vehicle coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners

3

> or operators of uninsured motor vehicles because of bodily injury,
> sickness, or disease, including death, resulting therefrom.

Fla. Stat. §627.727(1).

14.     Section 627.727(1) does not, however, mandate that any person or entity maintain UM/UIM insurance. In particular, §627.727(1) expressly states that UM/UIM coverage can be reduced or eliminated, providing that "[h]owever, the coverage required under this section is not applicable when, or to the extent that, an insured named in the policy makes a written rejection of the coverage on behalf of all insureds under the policy." Fla. Stat. §627.727(1).

15.     Unless rejected, a liability policy for a specifically insured automobile must provide UM/UIM coverage with limits equal to the limits of bodily injury liability insurance.

16.     Section 627.727(1) further provides that if the appropriate form is utilized and signed by the named insured, then then "it will be conclusively presumed that there was an informed, knowing rejection or election of lower limits on behalf of all insureds. Fla. Stat. §627.727(1).

17.     Section 627.727(2) operates where a policy does not cover a specifically identified vehicle. It provides, in pertinent part, as follows:

> The limits set forth in this subsection, and the provisions of subsection (1) which require uninsured motorist coverage to be provided in every motor vehicle policy delivered or issued for deliver in this state, do not apply to any policy which does not provide primary liability insurance that includes coverage for liabilities arising from the maintenance, operation, or use <u>of a specifically inured motor vehicle</u>.

Fla. Stat. §627.727(2).

18.     In the context where the policy does not cover a specifically identified vehicle, an insurer is not obligated to provide UM/UIM coverage. Rather, Florida's UM/UIM statute provides, in pertinent part, that "an insurer issuing such a policy shall make available as part of the

application for such policy, and at the written request of an insured, limits up to the bodily injury limits contained in such policy or $1 million, whichever is less." Fla. Stat. §627.727(2).

**The Policy**

19.     Upon information and belief, Defendant Rasier and/or its affiliated entities including, but not limited to UBER, provides services that would satisfy the statutory definition of a 'transportation network company,' under the TNC statute.

20.     On March 1, 2022, Progressive issued a "Transportation Network Company Commercial Auto Policy," Policy Number 06250110-8 (the "Period 2-3 Policy"), to Defendant, Rasier as a named insured. A true, accurate, and complete copy of the Period 2-3 Policy is attached hereto as Exhibit A.

21.     Defendant, UBER was a named insured under the Period 2-3 Policy.

22.     The limits of Liability Coverage under the Period 2-3 Policy are $1,000,000 combined single limit. (Ex. B; Declaration Page).

23.     The Period 2-3 Policy's relevant UM/UIM insuring language is contained at Form Z901 FL (07/21), that provides, in pertinent part, as follows:

**PART III—UNINSURED MOTORIST**

**INSURING AGREEMENT—UNINSURED MOTORIST BODILY INJURY COVERAGE**

Subject to the Limits of Liability, if **you** pay the premium for this coverage, **we** will pay damages, other than punitive or exemplary damages, that an **insured** is legally entitled to recover from the **owner** or operator of an **uninsured auto** because of **bodily injury**:
1.     sustained by an **insured**;
2.     caused by an **accident** occurring while the **TNC driver** is engaged in providing a **prearranged service**; and
3.     arising out of the ownership, maintenance, or use of an **uninsured auto**.

5

(Ex. A).

24.     The Period 2-3 Policy defines the term "accident," in pertinent part, as "a sudden, unexpected and unintended event that causes **bodily injury** or **property damage**." (Ex. A).

25.     The Period 2-3 Policy defines the term "insured auto," in pertinent part, as "any **auto** while being used by a **TNC driver**, but only while engaged in providing a **prearranged service** utilizing the **ride-share application** accessed using that **TNC driver's valid credentials**;…" (Ex. A, p. 7).

26.     The Period 2-3 Policy defines the term, "prearranged service," in pertinent part, as follows:

>      a.     the operation of any **insured auto** while the driver is logged on to the **ride-share application** and has recorded acceptance in the **ride-share application** of a request to provide **covered TNC operations** and is engaged in one of the following activities:
>           (i)     traveling to the accepted pick-up location of the passenger(s) or **goods** to be delivered, including the picking up of any passenger(s) or **goods**, and the pick-up location is in the state of Florida; or
>           (ii)     traveling to the final destination location of the passenger(s) or **goods**, including the dropping off of any passenger(s) or **goods**, and the pick-up location was in the state of Florida;.

(Ex. A).

27.     The Period 2-3 Policy also contained an additional definition for the term "insured," for purposes of liability coverage, expanding it, as follows:

>      **ADDITIONAL DEFINITIONS USED IN THIS PART ONLY**
>      When used in this Part III, whether in the singular, plural, or possessive:
>      1.     "**Insured**" means:
>           a.     **You;**
>           b.     Any **TNC driver** operating an **insured auto** who has entered into a contract with **you** to provide **covered TNC operations** via the **ride-share application** and whose

contract was in force at the time of the subject **accident**
or **loss**; and

c. Any person while **occupying** and **insured auto** who is
using the **valid credentials** of any other person at the
time of the subject **accident** or **loss** is not an "**insured**"
for purposes of this Part III.

(Ex. A).

28.    Rasier, the named insured, did not pay the required premium for the coverages

required under the Policy. Rather, on January 1, 2022, two (2) months before the Policy's effective

date, Amy Wagner, the insured's Head of North American Insurance, executed a "Florida

Rejection or Selection of Uninsured Motorist Coverage and Stacked or Non-Stacked Limits," form

(the "UM/UIM Selection Rejection Form"). A true, accurate, and complete copy of the UM/UIM

Selection/Rejection Form is attached hereto as Exhibit C.

29.    The UM/UIM Selection Rejection Form provided, in pertinent part, as follows:

**YOU ARE ELECTING NOT TO PURCHASE CERTAIN VALUABLE COVERAGE WHICH PROTECTS YOU
AND YOUR FAMILY OR YOU ARE PURCHASING UNINSURED MOTORIST LIMITS LESS THAN YOUR
BODILY INJURY LIABILITY LIMITS WHEN YOU SIGN THIS FORM. PLEASE READ CAREFULLY.**

**Description of coverage**
Uninsured Motorist Coverage provides for payment of certain benefits for damages caused by owners or operators of uninsured
motor vehicles because of bodily injury or death resulting therefrom.  Such benefits may include payments for certain medical
expenses, lost wages, and pain and suffering, subject to limitations and conditions contained in the policy.  For the purpose of
this coverage, an uninsured motor vehicle may include a motor vehicle as to which the bodily injury limits are less than your
damages.

Florida law requires that automobile liability policies include Uninsured Motorist Coverage limits equal to the Bodily Injury Liability
limits in your policy up to $1,000,000 combined single limit unless you seek a lower limit offered by the company, or reject
Uninsured Motorist Coverage entirely.  If you are interested in selecting Uninsured Motorist Coverage for a limit less than your
Bodily Injury Liability limits, or are rejecting this coverage entirely, you must complete and sign the appropriate option below.

Please indicate whether you desire to entirely reject Uninsured Motorist Coverage, or whether you desire this coverage at limits
equal to or lower than the Bodily Injury Liability limits of your policy:

☒    **I reject all Uninsured Motorist Coverage.**

(Ex. C).

30.    In addition, and as reflected on the Commercial Auto Insurance Coverage Summary

(the "Declarations Page"), for the Period 2-3 Policy, the Declarations page specifically reflects

that UM/UIM Coverage was rejected. A true, accurate, and complete copy of the Declarations Page is attached hereto as Exhibit B.

31.     The Declarations Page provides, in pertinent part, as follows:

**Outline of coverage**

| Description | Limits | Deductible |
|---|---|---|
| Liability To Others | | |
| Bodily Injury and Property Damage Liability | $1,000,000 combined single limit | |
| Comprehensive | Actual Cash Value | $2,500* |
| Collision | Actual Cash Value | $2,500* |

*$1,000 deductible will apply only if the insured auto was rented or leased from a vendor recognized and authorized by the named insured for specific TNC use.

| | | |
|---|---|---|
| Uninsured Motorist Non-Stacked | Rejected | |

(Ex. B).

32.     As reflected in the Period 2-3's Declaration Page, the Limits of Liability for UM/UIM Coverage is zero because the coverage was rejected. (Ex. B).

**The May 6, 2022 Incident**

33.     On May 6, 2022, Defendant, Monasterio, owned and was driving a 202 Honda Accord, Vehicle Identification No. 1HGCV1F35LA129244 (the "Honda").

34.     On May 6, 2022, while driving the Honda, Defendant, Monasterio, logged into the "Uber" ride share application.

35.     On May 6, 2022, Defendant, Monasterio, accepted a request on the Uber App to provide a ride for a passenger, Bradford Cavanaugh.

36.     At some point prior to 10:45 a.m., Defendant, Monasterio, picked up Bradford Cavanaugh at the Hollywood-Fort Lauderdale Airport.

37.     During this pre-arranged ride, Defendant, Monasterio, was driving the Honda traveling sought bound in the express lane when another individual, Michael Israel, lost control of his vehicle, spun through three lanes of traffic, and collided with Defendant, Monasterio's vehicle.

38.     As a result of this incident, Defendant, Monasterio, contends that she has sustained significant bodily injuries.

**Monasterio's Subsequent Lawsuit**

39.     On August 17, 2022, Defendant, Monasterio, filed a lawsuit in the Seventeenth Judicial Circuit in and for Broward County, Florida, Case No. CACE-22-012164 (the "Lawsuit"), in connection with the May 6, 2022. A true, accurate, and complete copy of the Complaint that was filed is attached hereto as Exhibit D.

40.     In the Complaint, Defendant, Monasterio, asserted claims against Progressive in which she contends that she is entitled to receive UM/UIM benefits pursuant to the Period 2-3 Policy. (Ex. D).

41.     In the Complaint, Defendant, Monasterio, has alleged that the May 6, 2022 incident occurred while she was engaged in a "prearranged ride."  (Ex. D, ¶¶ 11-13).

42.     In the Complaint, Defendant, Monasterio, alleged that the individual responsible for the May 6, 2022 incident was negligent and under insured. (Ex. D, ¶¶ 13-14).

43.     In the Complaint, Defendant, Monasterio, alleged that, as a result of Mr. Israel's negligence, she sustained "catastrophic bodily injuries, resulting in a spinal cord injury, loss of use of her legs, over $350,000 in medical bills…" (Ex. D, ¶ 15).

44.     In the Complaint, Monasterio alleged that Progressive was "required to provide at least $1,000,000 in underinsured/uninsured motorist coverage to TNC drivers, such as the Plaintiff, while the TNC driver is engaged in a prearranged ride." (Ex. D, ¶ 16).

45.     In the Complaint, Monasterio has further alleged that any attempt by Progressive, generally, and its reliance upon the UM/UIM Selection Rejection Form, specifically, to reject UM/UIM coverage is invalid because Florida's TNC Statute mandates that Progressive afford UM/UIM coverage. (Ex. D, ¶ 24).

## COUNT I – CLAIM FOR DECLATATORY JUDGMENT
(No Obligation for Progressive to Provide UM/UIM Coverage under TNC Statute)

45.     Progressive adopts and incorporates by reference paragraphs 1 through 44, above, which identify the parties, set forth the basis for this Court's exercise of jurisdiction and venue, describe Florida's TNC Statute, Florida's UM/UIM Statute, the Period 2-3 Policy, the May 6, 2022 incident, and the subsequent Lawsuit as though fully set forth herein.

46.     Pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, this Court is invested with the power to declare the rights and liabilities of the parties hereto, and to give such relief as it deems necessary under the facts and circumstances.

47.     As reflected in Florida's TNC Statute, Transportation Network Companies, were required to obtain and maintain insurance coverage for and on behalf of the TNC driver. *See* Fla. Stat. § 627.748(7)(c).

48.     Florida's TNC Statute imposed an obligation for the TNC Company to obtain and provide "uninsured and underinsured motorist coverage "as required by s. 627.727." Fla. Stat. § 627.748(7)(c).

49.     Florida's TNC statute did not specify, articulate, or set forth a particular amount of UM/UIM coverage that was required to be provided – referring only to the requirements imposed by § 627.727.

50.     But, section 627.727 does not mandate that any person or entity maintain UM/UIM insurance. *See* Fla. Stat. § 627.727. Rather, it expressly authorizes persons and entities to reject coverage entirely.

51.     Section 627.727(1) provides that UM/UIM coverage can be reduced or eliminated, providing that "the coverage required under this section is not applicable when, or to the extent that, an insured named in the policy makes a written rejection of the coverage on behalf of all insureds under the policy." Fla. Stat. §627.727(1).

52.     Alternatively, in situations where a policy does not afford coverage for a "specifically insured or identified motor vehicle," then there is no obligation to carry or provide UM/UIM insurance. In such a circumstance, the requirements of §627.727(2) would operate and control. See Fla. Stat. §627.727(2). Section 627.727(2) provides, in pertinent part, that:

> The limits set forth in this subsection, and the provisions of subsection (1) which require uninsured motorist coverage to be provided in every motor vehicle policy delivered or issued for delivery in this state, do not apply to any policy which does not provide primary liability insurance that includes coverage for liabilities arising from the maintenance, operation or use of a specifically insured motor vehicle."

Fla. Stat. §627.727(2) (emphasis added).

53.     Section 627.727(2) expressly provides: (i) that the requirement of insurance limits equal to bodily injury limits does not apply in such circumstances; and (ii) the insurer is required only to make available, as part of the application, and at the written request of the insured, UM/UIM coverage equal to the bodily injury limits or $1 Million, whichever is less. Fla. Stat. §627.727(2). Stated differently, pursuant to Fla. Stat. § 627.727(2), there is no obligation to provide insurance. Rather, there is only an obligation to notify that coverage is available.

54.     Progressive contends that the provisions of Fla. Stat. § 627.748 do not mandate that it provide generally, or under the Period 2-3 Policy, specifically, UM/UIM coverage in any amounts.

55.     Progressive contends that the provisions of Fla. Stat. § 627.748, and specifically the references to Fla. Stat. Fla. Stat. § 627.727, acknowledge that insurers, such as Progressive, need not provide UM/UIM coverage provide that the applicable requirements of Fla. Stat. § 627.727 are complied with.

56.     Progressive contends, therefore, that Florida's TNC statute does not obligate it to provide UM/UIM benefits, including benefits that could or may be available to cover the claims asserted in the Lawsuit for the May 6, 2022 incident.

57.     There exists an actual, present, and practical need for the declaration of coverage under the Period 2-3 Policy, and the rights and obligations of Progressive.

58.     There exists a present, ascertained or ascertainable state of facts or present controversy as to the state of facts concerning Progressive's rights, duties, and obligations under the Period 2-3 Policy.

62.     Progressive's rights, duties, and obligations under the Period 2-3 Policy are dependent upon the facts and the law applicable to the facts affecting coverage under the Period 2-3 Policy.

63.     Progressive and the Defendants have an actual, present, adverse and antagonistic interest in the subject matter described herein.

64.     All proper and present antagonistic interests are before the Court by proper process.

CASE NO.: 0:23-cv-61354

65.     Progressive is in doubt with respect to its rights, duties and obligations under the Period 2-3 Policy and, by this Complaint, seeks a declaration of its rights and obligations under those policies.

WHEREFORE, Plaintiff, Progressive Express Insurance Company respectfully requests that this Court enter a declaratory judgment concerning the Period 2-3 Policy and determine the existence, or non-existence, of an immunity, power, privilege, or right, or any other fact upon which the existence or non-existence, of such immunity, power, privilege or right may depend including the following:

a.     Declare that Florida's TNC Statute, by referencing and incorporating Fla. Stat. § 627.727, does not preclude Progressive from rejecting, excluding, disclaiming, reducing or eliminating coverage for UM/UIM benefits including, but not limited to, benefits that would otherwise potentially be available for ;

b.     That the Period 2-3 Policy does not provide UM/UIM coverage generally, or for Karina Monasterio, specifically, for the claims asserted in the Lawsuit or relating to or arising from the May 6, 2022 incident; and/or

c.     for such other and further relief as this Court deems just and proper.

## COUNT II – CLAIM FOR DECLARATORY JUDGMENT
### (No UM/UIM Coverage by Operation of 627.727(2))

66.     Progressive adopts and incorporates by reference paragraphs 1 through 44, above, which identify the parties, set forth the basis for this Court's exercise of jurisdiction and venue, describe Florida's TNC Statute, Florida's UM/UIM Statute, the Period 2-3 Policy, the May 6, 2022 incident, and the subsequent Lawsuit as though fully set forth herein.

67.     Progressive adopts and incorporates by reference paragraphs 45 through 66 comprising Count I concerning the ability to exclude, reduce, or eliminate coverage as and for paragraph 67 of this Count II.

68.     Pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, this Court is invested with the power to declare the rights and liabilities of the parties hereto, and to give such relief as it deems necessary under the facts and circumstances.

69.     The Period 2-3 Policy did not provide coverage for specifically identifiable automobiles, generally, and the Honda was not a specifically identifiable automobile under the Policy. (Ex. A).

70.     Prior to the Period 2-3 Policy going into effect, Progressive made available, as part of the application for the Period 2-3 Policy, limits of UM/UIM coverage up to the bodily injury limits contained in the Period 2-3 Policy or $1 Million. (Ex. C).

71.     Those coverages were made available and declined by the insured. (Ex. C).

72.     Progressive contends that, by making available, as part of the application process for the Period 2-3 Policy, limits of UM/UIM coverage up to the bodily injury limits contained in the Period 2-3 Policy or $1 Million, that it complied with its obligations under Fla. Stat. § 627.727(2).

73.     Progressive contends that, by satisfying its obligation to make such coverage available, and when the insureds, Defendants Rasier and Uber, declined to procure such coverage after it was made available to them, Progressive was neither required to nor obligated to provide UM/UIM benefits in any amount.

74.     Progressive contends that, the claims and events surrounding the May 6, 2022 incident and which form the basis for the UM/UIM Claim in the Lawsuit, therefore, seek benefits that are not covered by the Period 2-3 Policy.

75.     Progressive contends that it has no duty to pay or indemnify Defendant, Monasterio, for any damages that have or may be claimed by her in connection with the May 6, 2022, accident, including any claims for UM/UIM benefits asserted in the Lawsuit.

76.     There exists an actual, present, and practical need for the declaration of coverage under the Period 2-3 Policy, and the rights and obligations of Progressive.

77.     There exists a present, ascertained or ascertainable state of facts or present controversy as to the state of facts concerning Progressive's rights, duties, and obligations under the Period 2-3 Policy.

78.     Progressive's rights, duties, and obligations under the Period 2-3 Policy are dependent upon the facts and the law applicable to the facts affecting coverage under the Period 2-3 Policy.

79.     Progressive and the Defendants have an actual, present, adverse and antagonistic interest in the subject matter described herein.

80.     All proper and present antagonistic interests are before the Court by proper process.

81.     Progressive is in doubt with respect to its rights, duties and obligations under the Period 2-3 Policy and, by this Complaint, seeks a declaration of its rights and obligations under those policies.

WHEREFORE, Plaintiff, Progressive Express Insurance Company respectfully requests that this Court enter a declaratory judgment concerning the Period 2-3 Policy and determine the existence, or non-existence, of an immunity, power, privilege, or right, or any other fact upon

which the existence or non existence, of such immunity, power, privilege or right may depend including the following:

a.      Declare that the Period 2-3 Policy does not insure a specifically identifiable automobile, generally, and the Honda, specifically;

b.      That Progressive complied with its obligation to make available, as part of the application for the Period 2-3 Policy, UM/UIM Coverage, UM/UIM coverage in the amount equal to the bodily injury limits or $1 Million, to the insureds;

c.      That the insureds, Defendants, Uber and Rasier, declined such coverage;

d.      That the Period 2-3 Policy does not provide UM/UIM coverage to any person or entity, including, but not limited to, Defendants Uber, Rasier, or Monasterio;

e.      That the Period 2-3 Policy does not provide UM/UIM coverage and that such benefits are not available in connection with any of the claims arising from the May 6, 2022 incident or the Lawsuit; and

f.      For such other and further relief as this Court deems just and proper.

### COUNT III – CLAIM FOR DECLARATORY JUDGMENT
(No UM/UIM Coverage by Operation of 627.727(1))
(In the Alternative to Count II)

82.      Progressive adopts and incorporates by reference paragraphs 1 through 44, above, which identify the parties, set forth the basis for this Court's exercise of jurisdiction and venue, describe Florida's TNC Statute, Florida's UM/UIM Statute, the Period 2-3 Policy, the May 6, 2022 incident, and the subsequent Lawsuit as though fully set forth herein.

83.      Progressive adopts and incorporates by reference paragraphs 45 through 66 comprising Count I concerning the ability to exclude, reduce, or eliminate coverage as and for paragraph 67 of this Count II.

84.     Pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, this Court is invested with the power to declare the rights and liabilities of the parties hereto, and to give such relief as it deems necessary under the facts and circumstances.

85.     Prior to the Period 2-3 Policy going into effect, the insureds, Uber and Rasier executed the UM/UIM Selection Rejection Form. (Ex. C).

86.     The Defendants', Uber and Rasier's, rejection of UM/UIM Coverage was made on a "form approved by the office," consistent with the requirements of Fla. Stat. § 627.727(1).

87.     Progressive contends that, by obtaining a written rejection on a form approved by the office, as part of the application process for the Period 2-3 Policy, that it complied with its obligations under Fla. Stat. § 627.727(1) and was, therefore, is entitled to the conclusive presumption that there was an informed, knowing rejection of UM/UIM limits by the insureds.

88.     Progressive contends that, by satisfying its obligation under Fla. Stat. § 627.727(1), Defendants Rasier and Uber, expressly rejected UM/UIM and, therefore, Progressive was neither required to nor obligated to provide UM/UIM benefits in any amount under the Period 2-3 Policy.

89.     Progressive contends that, the claims and events surrounding the May 6, 2022 incident and which form the basis for the UM/UIM Claim in the Lawsuit, therefore, seek benefits that are not covered by the Period 2-3 Policy.

90.     Progressive contends that it has no duty to pay or indemnify Defendant, Monasterio, for any damages that have or may be claimed by her in connection with the May 6, 2022, accident, including any claims for UM/UIM benefits asserted in the Lawsuit.

91.     There exists an actual, present, and practical need for the declaration of coverage under the Period 1 Policy and the Period 2-3 Policy, and the rights and obligations of Progressive.

92.     There exists a present, ascertained or ascertainable state of facts or present controversy as to the state of facts concerning Progressive's rights, duties, and obligations under the Period 2-3 Policy.

93.     Progressive's rights, duties, and obligations under the Period 2-3 Policy are dependent upon the facts and the law applicable to the facts affecting coverage under the Period 2-3 Policy.

94.     Progressive and the Defendants have an actual, present, adverse and antagonistic interest in the subject matter described herein.

95.     All proper and present antagonistic interests are before the Court by proper process.

96.     Progressive is in doubt with respect to its rights, duties and obligations under the Period 2-3 Policy and, by this Complaint, seeks a declaration of its rights and obligations under those policies.

WHEREFORE, Plaintiff, Progressive Express Insurance Company respectfully requests that this Court enter a declaratory judgment concerning the Period 2-3 Policy and determine the existence, or non-existence, of an immunity, power, privilege, or right, or any other fact upon which the existence or non existence, of such immunity, power, privilege or right may depend including the following:

a.      Declare Progressive obtained the insured's rejection of UM/UIM Coverage on a form approved by the office as required by Fla. Stat. § 627.727(1);

b.      That Progressive is entitled to the conclusive presumption that there was an informed, knowing rejection of UM/UIM coverage by the insureds in connection with the Period 2-3 Policy;

c.      That the insureds, Defendants, Uber and Rasier, declined such coverage;

d.      That the Period 2-3 Policy does not provide UM/UIM coverage to any person or entity, including, but not limited to, Defendants Uber, Rasier, or Monasterio;

e.      That the Period 2-3 Policy does not provide UM/UIM coverage and that such benefits are not available in connection with any of the claims arising from the May 6, 2022 incident or the Lawsuit; and

f.      For such other and further relief as this Court deems just and proper.

## <u>COUNT IV – CLAIM FOR DECLARATORY JUDGMENT</u>
(No UM/UIM Coverage by Operation of 627.727(1))
(In the Alternative to Counts II and III)

97.     Progressive adopts and incorporates by reference paragraphs 1 through 44, above, which identify the parties, set forth the basis for this Court's exercise of jurisdiction and venue, describe Florida's TNC Statute, Florida's UM/UIM Statute, the Period 2-3 Policy, the May 6, 2022 incident, and the subsequent Lawsuit as though fully set forth herein.

98.     Progressive adopts and incorporates by reference paragraphs 45 through 66 comprising Count I concerning the ability to exclude, reduce, or eliminate coverage as and for paragraph 67 of this Count II.

99.     Pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, this Court is invested with the power to declare the rights and liabilities of the parties hereto, and to give such relief as it deems necessary under the facts and circumstances.

100.    Prior to the Period 2-3 Policy going into effect, the insureds, Uber and Rasier executed the UM/UIM Selection Rejection Form. (Ex. C).

101.    The Defendants', Uber and Rasier's, rejection of UM/UIM Coverage was made, in writing.

102.    Progressive contends that, by obtaining a written rejection, that it complied with its obligations under Fla. Stat. § 627.727(1), and that it obtained an informed, knowing rejection of UM/UIM limits by the insureds.

103.    Progressive contends that, by satisfying its obligation under Fla. Stat. § 627.727(1), Defendants Rasier and Uber, expressly rejected UM/UIM and, therefore, Progressive was neither required to nor obligated to provide UM/UIM benefits in any amount under the Period 2-3 Policy.

104.    Progressive contends that, the claims and events surrounding the May 6, 2022, incident and which form the basis for the UM/UIM Claim in the Lawsuit, therefore, seek benefits that are not covered by the Period 2-3 Policy.

105.    Progressive contends that it has no duty to pay or indemnify Defendant, Monasterio, for any damages that have or may be claimed by her in connection with the May 6, 2022, accident, including any claims for UM/UIM benefits asserted in the Lawsuit.

106.    There exists an actual, present, and practical need for the declaration of coverage under the Period 1 Policy and the Period 2-3 Policy, and the rights and obligations of Progressive.

107.    There exists a present, ascertained or ascertainable state of facts or present controversy as to the state of facts concerning Progressive's rights, duties, and obligations under the Period 2-3 Policy.

108.    Progressive's rights, duties, and obligations under the Period 2-3 Policy are dependent upon the facts and the law applicable to the facts affecting coverage under the Period 2-3 Policy.

109.    Progressive and the Defendants have an actual, present, adverse and antagonistic interest in the subject matter described herein.

110.    All proper and present antagonistic interests are before the Court by proper process.

111.    Progressive is in doubt with respect to its rights, duties and obligations under the Period 2-3 Policy and, by this Complaint, seeks a declaration of its rights and obligations under those policies.

WHEREFORE, Plaintiff, Progressive Express Insurance Company respectfully requests that this Court enter a declaratory judgment concerning the Period 2-3 Policy and determine the existence, or non-existence, of an immunity, power, privilege, or right, or any other fact upon which the existence or non existence, of such immunity, power, privilege or right may depend including the following:

a.    Declare Progressive obtained a rejection of UM/UIM Coverage from the insureds prior to the Period 2-3 policy's inception;

b.    That Progressive obtained an informed, knowing rejection of UM/UIM coverage by the insureds in connection with the Period 2-3 Policy;

c.    That the insureds, Defendants, Uber and Rasier, declined such coverage;

d.    That the Period 2-3 Policy does not provide UM/UIM coverage to any person or entity, including, but not limited to, Defendants Uber, Rasier, or Monasterio;

e.    That the Period 2-3 Policy does not provide UM/UIM coverage and that such benefits are not available in connection with any of the claims arising from the May 6, 2022 incident or the Lawsuit; and

f.    For such other and further relief as this Court deems just and proper.

CASE NO.: 0:23-cv-61354

Dated: July 17, 2023                    Respectfully submitted,

                                        */s/ Patrick K. Dahl*
                                        Patrick K. Dahl, Esquire (084109)
                                        pdahl@morganakins.com
                                        Florida Bar No. 084109
                                        MORGAN & AKINS, PLLC
                                        Attorneys for Progressive Express Insurance
                                        Company
                                        501 E. Las Olas Boulevard
                                        Suite 300
                                        Ft. Lauderdale, FL 33301
                                        Phone: (754) 255-3010
                                        Fax: (215) 600-1303