UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:23-cv-61354

PROGRESSIVE EXPRESS INSURANCE COMPANY,

    Plaintiff,

vs.

RASIER-DC, LLC, a foreign limited liability company; UBER TECHNOLOGIES, INC., a foreign corporation; and KARINA MONASTERIO, individually,

    Defendants.

_____/

## **PROGRESSIVE'S ANSWER TO COUNTERCLAIM**

Plaintiff/Counter-Defendant, Progressive Express Insurance Company ("Progressive"), by and through its attorneys, Morgan & Akins, PLLC, states by way of Answer to the Counterclaim/Cross-Claim filed by Defendant/Counter-Plaintiff, Karina Monasterio ("Monasterio), [DE 22], as follows:

### **JURISDICTION, VENUE, AND THE PARTIES**

1. The Plaintiff is a resident of Broward County, Florida.

**ANSWER:** Progressive admits the allegations contained at paragraph 1.

2. The Defendant, UBER TECHNOLOGIES INC., is a Delaware corporation for profit doing business in Broward County, FL with a Florida registered agent in Broward County, Florida.

**ANSWER:** Progressive admits that UBER Technologies, Inc., is a Delaware corporation. Progressive lacks information sufficient to form a knowledge or belief as to the truth or falsity of the remaining allegations contained at paragraph 2 and, therefore, neither admits nor denies same.

      3.     The Defendant, RASIER (FL), LLC, is a Delaware limited liability company for profit doing business in Broward County, Florida with a Florida registered agent in Broward County, Florida.

**ANSWER:** Progressive admits that Rasier-DC, LLC, improperly referred to as Rasier (FL), LLC, is a Delaware limited liability company doing business in Broward County, Florida. Progressive lacks information sufficient to form a knowledge or belief as to the truth or falsity of the remaining allegations contained at paragraph 3 and, therefore, neither admits nor denies same.

      4.     The Defendant, PROGRESSIVE EXPRESS INSRUANCE COMPANY, is an Ohio corporation for profit, doing business in Florida with offices in Broward County, Florida.

**ANSWER:** Progressive admits the allegations contained at paragraph 4.

      5.     Venue is proper in the 17th Judicial Circuit because the facts giving rise to this cause of action occurred in Broward County Florida and the Defendants each maintain offices in Broward County Florida.

**ANSWER:** Progressive denies the allegations, characterizations, and legal conclusion contained at paragraph 5 as this is a counterclaim filed in connection with an action pending in the United States District Court for the Southern District of Florida, not the Seventeenth Judicial Circuit in and for Broward County, Florida.

### GENERAL ALLEGATIONS COMMON TO ALL COUNTS

      6.     Defendants UBER and RASIER operate the Uber application, a "Transportation Network Company" (TNC) as defined by Florida Statutes section 627.748(1)(f) because UBER and RASIER use a digital network to connect a rider to a TNC driver, who provides prearranged rides.

**ANSWER:** Progressive admits the allegations contained at paragraph 6.

      7.     Defendant PROGRESSIVE issued a "Transportation Network Company Commercial Auto Policy" to UBER and RAISER in effect in Florida for the policy period March 1, 2022 through March 1, 2023.

CASE NO.: 0:23-cv-61354

**ANSWER:**   Progressive admits that it issue a "Transportation Network Company Commercial Auto Policy" to Defendant/Cross-Defendant, Raiser-DC, LLC, as a named insured and that UBER was an additional insured under the Policy. Progressive denies the remaining allegations contained at paragraph 7, as phrased.

> 8. On May 6, 2022, the Plaintiff was a TNC driver as defined by Fla. Stat. §627.748(1)(g) because she received a connection to a potential rider and related services from UBER and RASIER, and in return for compensation, she used a vehicle she owned to provide a prearranged ride to a rider upon connection through a digital network.

**ANSWER:**   Progressive admits that Monasterio logged into the "Uber" ride share application on May 6, 2022, and accepted a request on the Uber App to provide a ride for Bradford Cavanaugh. Further responding, Progressive states that the remaining allegations contained at paragraph 8 set forth a legal conclusion, rather than the allegation of any fact, for which no answer is required. To the extent that an answer is deemed necessary, Progressive admits only that Fla. Stat. § 627.748(1)(g) defines the terms "transportation network company driver," or "TNC driver," and, to the extent that Monasterio's allegations conflict with the definitions or any subsequent decisions interpreting the statute or the sub-paragraph, the remaining allegations contained at paragraph 8 are denied.

> 9. When Plaintiff first became a TNC driver, she relied on the understanding that Defendants offered all insurance coverages required by law and relied on the understanding that Defendants provided her uninsured/underinsured motorist coverage.

**ANSWER:**   Progressive denies the allegations, characterizations, and legal conclusions contained at paragraph 9.

> 10. On May 6, 2022, non-party Bradford Cavanaugh was a "rider" as defined by Fla. Stat. §627.748(1)(c) because he used the Uber app to connect with the Plaintiff in order to obtain a prearranged ride in the Plaintiff's vehicle between points chosen by Mr. Cavanaugh.

**ANSWER:** Progressive admits that Monasterio logged into the "Uber" ride share application on May 6, 2022, and accepted a request on the Uber App to provide a ride for Bradford Cavanaugh. Further responding, Progressive states that the remaining allegations contained at paragraph 10 set forth a legal conclusion, rather than the allegation of any fact, for which no answer is required. To the extent that an answer is deemed necessary, Progressive admits only that Fla. Stat. § 627.748(1)(c) defines the terms "rider," and, to the extent that Monasterio's allegations conflict with the definitions or any subsequent decisions interpreting the statute or the sub-paragraph, the remaining allegations contained at paragraph 10 are denied.

> 11. On May 6, 2022, the Plaintiff was engaged in a "prearranged ride" as defined by Fla. Stat. §627.748(1)(b) because she accepted the ride requested by Mr. Cavanaugh, who traveled from Ohio to South Florida, to transport him from Fort Lauderdale Airport to his chosen final destination in the South Florida area.

**ANSWER:** Progressive admits that Monasterio logged into the "Uber" ride share application on May 6, 2022, and accepted a request on the Uber App to provide a ride for Bradford Cavanaugh. Further responding, Progressive states that the remaining allegations contained at paragraph 11 set forth a legal conclusion, rather than the allegation of any fact, for which no answer is required. To the extent that an answer is deemed necessary, Progressive admits only that Fla. Stat. § 627.748(1)(b) defines the terms "prearranged ride," and, to the extent that Monasterio's allegations conflict with the definitions or any subsequent decisions interpreting the statute or the sub-paragraph, the remaining allegations contained at paragraph 11 are denied.

> 12. While Plaintiff was engaged in a prearranged ride traveling southbound on the express lane of I-95, non-party Michael Israel negligently lost control of his vehicle, spun through three lanes of traffic, and collide with Plaintiff's vehicle.

**ANSWER:** Progressive admits that Michael Israel lost control of his vehicle, spun through three lanes of traffic, and collided with Monasterio's vehicle. Further responding, Progressive states that

the remaining allegations contained at paragraph 12 constitute legal conclusions for which no response is required.

      13.  On May 6, 2022, Mr. Israel was underinsured.

**ANSWER:**  Progressive admits only that Monasterio has alleged that Israel was negligent and underinsured. Progressive lacks information sufficient to form a knowledge or belief as to the truth or falsity of the remaining allegations contained at paragraph 13 and, therefore, neither admits nor denies same.

> 14.  Mr. Israel's negligence caused the Plaintiff catastrophic bodily injuries, resulting in a spinal cord injury, loss of use of her legs, over $350,000 in medical bills, and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, and loss of ability to earn money. These losses will continue into the future.

**ANSWER:**  Progressive admits only that Monasterio has alleged that Israel's negligence the cause of her injuries. Progressive lacks information sufficient to form a knowledge or belief as to the truth or falsity of the remaining allegations contained at paragraph 14 and, therefore, neither admits nor denies same.

> 15.  On May 6, 2022, Florida law required UBER, RASIER, and PROGRESSIVE, as their insurer to provide at least $1,000,000.00 in underinsured/uninsured motorists coverage to TNC drivers, such as the Plaintiff, while the TNC driver is engaged in a prearranged ride. See. Fla. Stat. §627.748(7)(c)c.

**ANSWER:**  Progressive denies the allegations, characterizations, and legal conclusions contained at paragraph 15.

> 16.  Florida law specifically requires that ". . . the insurance maintained by the TNC must provide the coverage required under this subsection, beginning with the first dollar amount of the claim, and have a duty to defend such claim." Fla. Stat. §627.748(7)(d).

**ANSWER:** Progressive admits only that Monasterio has quoted a portion of the statute. Further responding, Progressive denies that it was required to provide the insurance as suggested or implied at paragraph 16.

17. TNC drivers, such as the Plaintiff, have the ability to check the status of the coverages offered by the Defendants using the Uber app. In May 2022, the app displayed a PROGRESSIVE "Certificate of Insurance" which did not indicate uninsured/underinsured motorist coverage was rejected. See Figure 1. (figure omitted)

**ANSWER:** Progressive lacks information sufficient to form a knowledge or belief as to the truth or falsity of the allegations contained at paragraph 17 and, therefore, neither admits nor denies same.

18. After the collision, Plaintiff sent insurance disclosure requests to each Defendant. The responses provided certificates of insurance claiming that UBER and RASIER rejected UM/UIM insurance coverage in Florida. These responses differ from Defendant's public statements available to users through the Uber app.

**ANSWER:** Progressive admits that UM/UIM insurance was rejected by the insureds. Further responding, Progressive denies making any public statements suggesting or implying that UM/UIM coverage was available under the Policy issued to Uber and Rasier and denies the remaining allegations, characterizations, and legal conclusions contained at paragraph 18. Further responding, Progressive denies that Monasterio ever saw, read, or relied upon any purported statements.

19. In their post-collision insurance disclosure response, Defendants also disclosed the following language of policy No. 06250110, which includes the following coverages: PART III- Uninsured Motorist- "… we will pay for damages, other than punitive or exemplary damages, that an insured is legally entitled to recover from the owner or operator of an uninsured auto because of bodily injury: 1. Sustained by an insured; 2. Caused by an accident occurring while the TNC driver is engaged in providing a prearranged service; and 3. Arising out of the ownership,

6

> maintenance, or use of an uninsured auto. The bodily injury must be a serious injury as described in section 627.737(2) of the Florida Motor Vehicle No-Fault Law, as amended, before we will pay for damages consisting of pain, suffering, mental anguish, or inconvenience."

**ANSWER:** Progressive states that it provided a full copy of the policy in response to the insurance disclosure. Further responding, Progressive denies that paragraph 19, fully, accurately, or completely quotes all pertinent terms and conditions of the Policy and, therefore, to the extent that the allegations contained at paragraph 19 conflict with the Policy, they are denied.

> 20. After the collision, Plaintiff sent a request for Pre-Arbitration Mediation to the Defendants, requesting to meet with representatives of the Defendants to resolve the parties' dispute.

**ANSWER:** Progressive denies that it was subject to pre-suit arbitration as the carrier.

> 21. The Defendants failed to respond to this request and failed to abide by the terms of UBER and RASIER's agreements with the Plaintiff.

**ANSWER:** Progressive denies the allegations, characterizations, and legal conclusions contained at paragraph 21.

> 22. After the collision, Defendants provided the Plaintiff with a document titled "Florida Rejection or Selection of Uninsured Motorist Coverage and Stacked of Non-Stacked Limits" and signed by UBER's "Head of North America Insurance" Amy E. Wagner.

**ANSWER:** Progressive admits the allegations contained ta paragraph 22.

> 23. This rejection is not valid because it is expressly contradicted by the plain language of Fla. Stat. §627.748(7)(c)c and §627.748(7)(d).

**ANSWER:** Progressive denies the allegations, characterizations, and legal conclusions contained at paragraph 23.

> 24. In July, 2022, PROGRESSIVE informed Plaintiff that it denied Plaintiff's claim for insurance coverage for the loses sustained in the May 6, 2022 collision.

**ANSWER:** Progressive admits that it denied Plaintiff's claim for UM/UIM coverage as such coverage had been rejected by the named insured.

**COUNT I - DECLARATORY JUDGMENT FOR VIOLATION OF FLA. STAT. §727.748**

___. Plaintiff re-alleges paragraphs 1-25, and further alleges:

**ANSWER:** Progressive adopts and incorporates by reference its answers to paragraphs 1 through 24, above (paragraph 25 has not been alleged yet), as and for its answer to this paragraph of this Count I as though fully set forth herein.

25. Florida Statues grants Plaintiff a right to receive uninsured/underinsured motorist coverage from UBER, RASIER, and PROGRESSIVE, and requires the Defendants to provide that coverage.

**ANSWER:** Progressive denies the allegations, characterizations, and legal conclusions contained at paragraph 25.

26. Plaintiff's and Defendants have an actual controversy, because Defendants have refused to provide uninsured/underinsured motorist insurance benefits as required by Fla. Stat §627.748.

**ANSWER:** Progressive admits that there is a controversy.

27. Plaintiff is in doubt regarding her rights, and the Defendants' obligations, under the PROGRESSIVE insurance policy No. 06250110.

**ANSWER:** Progressive lacks information sufficient to form a knowledge or belief concerning the truth or falsity of the allegations concerning Monasterio's beliefs or doubts as alleged at paragraph 27 and, therefore, neither admits nor denies same.

28. Plaintiff is also in doubt and her rights, and the Defendants' obligations, under her contract with UBER and RASIER. Plaintiff is not in possession of this agreement.

**ANSWER:** Progressive lacks information sufficient to form a knowledge or belief concerning the truth or falsity of the allegations concerning Monasterio's beliefs or doubts as alleged at paragraph 28 and, therefore, neither admits nor denies same.

> 29. Both the PROGRESSIVE insurance policy and the UBER and RASIER contract are affected by Fla. Stat. §627.748.

**ANSWER:** Progressive denies the allegations, characterizations, and legal conclusions contained at paragraph 29.

> 30. Plaintiff requests this Court determine the validity, construction, and application of Fla. Stat §627.748 to her rights under the PROGRESSIVE insurance policy and the UBER and RASIER agreements, and determine the obligations of the Defendants.

**ANSWER:** Progressive states that it has no obligation to the Monasterio under the operative policy and, therefore, to the extent that paragraph 30 requires a further response, Progressive denies the allegations, characterizations, and legal conclusions contained at paragraph 30.

WHEREFORE, Plaintiff/Counter-Defendant, Progressive Express Insurance Company, denies that Defendant/Counter-Plaintiff is entitled to any relief or declaration concerning the terms or conditions of the Policy, and, therefore, prays that this Court enters judgment in its favor, and against the Plaintiff/Counter-Defendant, Karina Monasterio.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

CASE NO.: 0:23-cv-61354

Dated: October 6, 2023         Respectfully submitted,

                                                 */s/ Patrick K. Dahl*
**Patrick K. Dahl, Esquire (084109)**
pdahl@morganakins.com
Florida Bar No. 084109
**MORGAN & AKINS, PLLC**
*Attorneys for Progressive Express Insurance Company*
501 E. Las Olas Boulevard
Suite 300
Ft. Lauderdale, FL 33301
Phone: (754) 255-3010
Fax: (215) 600-1303

### CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system on October 6, 2023, and the foregoing document is being served this day on all counsel or parties of record on the Service List below, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

                                       /s/ Patrick K Dahl
                                       Patrick K. Dahl, Esquire