UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:23-cv-61354

PROGRESSIVE EXPRESS INSURANCE COMPANY,

    Plaintiff,

vs.

RASIER-DC, LLC, a foreign limited liability company; UBER TECHNOLOGIES, INC., a foreign corporation; and KARINA MONASTERIO, individually,

    Defendants.

_____/

**PROGRESSIVE'S STATEMENT OF MATERIAL FACTS**

    Plaintiff, Progressive Express Insurance Company ("Progressive"), by and through its attorneys, Morgan & Akins, PLLC, pursuant to and in accordance with Local Rule 56.1 of the Local Rules for the United States District Court for the Southern District of Florida, submits this "Statement of Material Facts," for consideration in connection the contemporaneously filed "Progressive's Motion for Summary Judgment." In support thereof, Progressive states as follows:

**STAEMENT OF MATERIAL FACTS**

    1.    Rasier-DC, LLC ("Rasier"), operated at Transportation Network Company in Florida. (Progressive's Amend. Compl., [DE 12, ¶ 20]; Rasier and Uber's Ans. to Amend. Compl., [DE 18, ¶ 20]; Monasterio's Ans., Demand for Jury Trial, Aff. Def., Crossclaim, and Counterclaim [DE 22, ¶ 20]).

    2.    On March 1, 2022, Progressive issued a "Transportation Network Company Commercial Auto Policy," Policy Number 06250110-8 (the "Period 2-3 Policy"), to Defendant, Rasier as a named insured. (Progressive's Amend. Compl., [DE 12 ¶ 21]; Rasier and Uber's Ans. to Amend. Compl., [DE 18, ¶ 21]; Monasterio's Ans., Demand for Jury Trial, Aff. Def., Crossclaim, and Counterclaim [DE 22, ¶ 21]; Policy, [DE 12-1]).

3. Defendant, Uber Technologies, Inc., was an additional insured under the Period 2-3 Policy. (Progressive's Amend. Compl., [DE 12 ¶ 22]; Rasier and Uber's Ans. to Amend. Compl., [DE 18, ¶ 22]; Policy, [DE 12-1, p. 23]).

4. The limits of liability coverage under the Period 2-3 Policy are $1,000,000 combined single limit. (Progressive's Amend. Compl., [DE 12 ¶ 23]; Rasier and Uber's Ans. to Amend. Compl., [DE 18, ¶ 23]; Policy, [DE 12-1, p. 5]).

5. The Period 2-3 Policy references UM/UIM Coverage, providing, in pertinent part, as follows:

> **PART III—UNINSURED MOTORIST**
>
> **INSURING AGREEMENT—UNINSURED MOTORIST BODILY INJURY COVERAGE**
>
> Subject to the Limits of Liability, if **you** pay the premium for this coverage, **we** will pay damages, other than punitive or exemplary damages, that an **insured** is legally entitled to recover from the **owner** or operator of an **uninsured auto** because of **bodily injury**:
>
> 1. sustained by an **insured**;
>
> 2. caused by an **accident** occurring while the **TNC driver** is engaged in providing a **prearranged service**; and
>
> 3. arising out of the ownership, maintenance, or use of an **uninsured auto**.

(Progressive's Amend. Compl., [DE 12 ¶ 24]; Rasier and Uber's Ans. to Amend. Compl., [DE 18, ¶ 24]; Policy, [DE 12-1, p. 56]).

6. The Period 2-3 Policy defines the term "accident," in pertinent part, as "a sudden, unexpected and unintended event that causes **bodily injury** or **property damage**." (Progressive's Amend. Compl., [DE 12 ¶ 25]; Rasier and Uber's Ans. to Amend. Compl., [DE 18, ¶ 25]; Monasterio's Ans., Demand for Jury Trial, Aff. Def., Crossclaim, and Counterclaim [DE 22, ¶ 25]; Policy, [DE 12-1, p. 41])(emphasis in original).

7. The term "insured auto," is defined in the Period 2-3 Policy, in pertinent part, as "any **auto** while being used by a **TNC driver**, but only while engaged in providing a **prearranged service** utilizing the **ride-share application** accessed using that **TNC driver's valid credentials**;…" (Progressive's Amend. Compl., [DE 12 ¶ 26]; Rasier and Uber's Ans. to Amend.

Compl., [DE 18, ¶ 26]; Monasterio's Ans., Demand for Jury Trial, Aff. Def., Crossclaim, and Counterclaim [DE 22, ¶ 26]; Policy, [DE 12-1, p. 42])(emphasis in original).

8. A "prearranged service," is defined in the Period 2-3 Policy, in pertinent part, as follows:

> a. the operation of any **insured auto** while the driver is logged on to the **ride-share application** and has recorded acceptance in the **ride-share application** of a request to provide **covered TNC operations** and is engaged in one of the following activities:
> (i) traveling to the accepted pick-up location of the passenger(s) or **goods** to be delivered, including the picking up of any passenger(s) or **goods**, and the pick-up location is in the state of Florida; or
> (ii) traveling to the final destination location of the passenger(s) or **goods**, including the dropping off of any passenger(s) or **goods**, and the pick-up location was in the state of Florida;.

(Progressive's Amend. Compl., [DE 12 ¶ 27]; Rasier and Uber's Ans. to Amend. Compl., [DE 18, ¶ 27]; Monasterio's Ans., Demand for Jury Trial, Aff. Def., Crossclaim, and Counterclaim [DE 22, ¶ 27]; Policy, [DE 12-1, p. 43])(emphasis in original).

9. The Period 2-3 Policy also contained an additional definition for the term "insured," concerning Part III coverage, expanding it, as follows:

> **ADDITIONAL DEFINITIONS USED IN THIS PART ONLY**
> When used in this Part III, whether in the singular, plural, or possessive:
> 1. "**Insured**" means:
> a. **You;**
> b. Any **TNC driver** operating an **insured auto** who has entered into a contract with **you** to provide **covered TNC operations** via the **ride-share application** and whose contract was in force at the time of the subject **accident** or **loss**; and
> c. Any person while **occupying** and **insured auto** who is using the **valid credentials** of any other person at the time of the subject **accident** or **loss** is not an "**insured**" for purposes of this Part III.

(Progressive's Amend. Compl., [DE 12 ¶ 28]; Rasier and Uber's Ans. to Amend. Compl., [DE 18, ¶ 28]; Monasterio's Ans., Demand for Jury Trial, Aff. Def., Crossclaim, and Counterclaim [DE 22, ¶ 28]; Policy, [DE 12-1, p. 44]).

10.  UM/UIM Coverage was not provided in the Period 2-3 Policy because Rasier, the named insured, did not pay the required premium for UM/UIM Coverage as required under the Period 2-3 Policy. (Progressive's Amend. Compl., [DE 12 ¶ 29]; Rasier and Uber's Ans. to Amend. Compl., [DE 18, ¶ 29]).

11.  On January 1, 2022, two (2) months before the Period 2-3 Policy's effective date, Amy Wagner, the insured's Head of North American Insurance, executed a "Florida Rejection or Selection of Uninsured Motorist Coverage and Stacked or Non-Stacked Limits," form. (Progressive's Amend. Compl., [DE 12 ¶ 29]; Rasier and Uber's Ans. to Amend. Compl., [DE 18, ¶ 29]; UM/UIM Selection Rejection Form, [DE 12-3]).

12.  The UM/UIM Selection Rejection Form provided, in pertinent part, as follows:

> **FLORIDA REJECTION OR SELECTION OF UNINSURED MOTORIST COVERAGE AND STACKED OR NON-STACKED LIMITS**
>
> **YOU ARE ELECTING NOT TO PURCHASE CERTAIN VALUABLE COVERAGE WHICH PROTECTS YOU AND YOUR FAMILY OR YOU ARE PURCHASING UNINSURED MOTORIST LIMITS LESS THAN YOUR BODILY INJURY LIABILITY LIMITS WHEN YOU SIGN THIS FORM. PLEASE READ CAREFULLY.**
>
> **Description of coverage**
> Uninsured Motorist Coverage provides for payment of certain benefits for damages caused by owners or operators of uninsured motor vehicles because of bodily injury or death resulting therefrom. Such benefits may include payments for certain medical expenses, lost wages, and pain and suffering, subject to limitations and conditions contained in the policy. For the purpose of this coverage, an uninsured motor vehicle may include a motor vehicle as to which the bodily injury limits are less than your damages.
>
> Florida law requires that automobile liability policies include Uninsured Motorist Coverage limits equal to the Bodily Injury Liability limits in your policy up to $1,000,000 combined single limit unless you select a lower limit offered by the company, or reject Uninsured Motorist Coverage entirely. If you are interested in selecting Uninsured Motorist Coverage for a limit less than your Bodily Injury Liability limits, or are rejecting this coverage entirely, you must complete and sign the appropriate option below.
>
> Please indicate whether you desire to entirely reject Uninsured Motorist Coverage, or whether you desire this coverage at limits equal to or lower than the Bodily Injury Liability limits of your policy:
>
> ☒ I reject all Uninsured Motorist Coverage.
>
> ☐ I want Uninsured Motorist Coverage in the same limits as my Bodily Injury Liability Coverage or $1,000,000 combined single limit, whichever is less.
>
> ☐ I want Uninsured Motorist Coverage at the limit selected below.
>     ☐ $10,000 each person/$20,000 each accident
>     ☐ $100,000 each accident
>     ☐ $1,000,000 combined single limit

(Progressive's Amend. Compl., [DE 12 ¶ 30]; Rasier and Uber's Ans. to Amend. Compl., [DE 18, ¶ 30]; UM/UIM Selection Rejection Form, [DE 12-3]).

13.  $1 Million in UM/UIM coverage was specifically offered, made available, and rejected by the applicant, Rasier. (Progressive's Amend. Compl., [DE 12 ¶¶ 29-30, ¶¶ 69-70]; Rasier and Uber's Ans. to Amend. Compl., [DE 18, ¶¶ 29-30, 69-70]; UM/UIM Selection Rejection Form, [DE 12-3]).

14.  Rasier, the applicant and named insured, admitted making a written rejection of UM/UIM coverage on behalf of all insureds, on the UM/UIM Selection Rejection Form. (Progressive's Amend. Compl., [DE 12 ¶¶ 84-86]; Rasier and Uber's Ans. to Amend. Compl., [DE 18, ¶¶ 84-86]; UM/UIM Selection Rejection Form [DE 12-3]).

15. The Commercial Auto Insurance Coverage Summary (the "Declarations Page"), for the Period 2-3 Policy, specifically reflects that UM/UIM Coverage was rejected. (Progressive's Amend. Compl., [DE 12 ¶ 31]; Rasier and Uber's Ans. to Amend. Compl., [DE 18, ¶ 31]; Dec. Page, [DE 12-2]).

16. The Declarations Page provides, in pertinent part, as follows:

**Outline of coverage**

| Description | Limits | Deductible |
|---|---|---|
| Liability To Others | | |
| Bodily Injury and Property Damage Liability | $1,000,000 combined single limit | |
| Comprehensive | Actual Cash Value | $2,500* |
| Collision | Actual Cash Value | $2,500* |

*$1,000 deductible will apply only if the insured auto was rented or leased from a vendor recognized and authorized by the named insured for specific TNC use.

| | | |
|---|---|---|
| Uninsured Motorist Non-Stacked | Rejected | |

Progressive's Amend. Compl., [DE 12 ¶ 32]; Rasier and Uber's Ans. to Amend. Compl., [DE 18, ¶ 32]; Dec. Page, [DE 12-2]).

17. As reflected in the Period 2-3's Declaration Page, the Limits of Liability for UM/UIM Coverage is zero because the coverage was rejected. Progressive's Amend. Compl., [DE 12 ¶ 33]; Rasier and Uber's Ans. to Amend. Compl., [DE 18, ¶ 33]; Dec. Page, [DE 12-2]).

18. Defendant, Karina Monasterio, downloaded the Uber App to operate as a partner-driver in January or February, 2022. (Ex. A, K. Monasterio Dep., p. 80:22-25).

19. As part of that process to operate as a partner driver, she was required to acknowledge and sign off on agreements before operating. (Ex. A, K. Monasterio Dep., p. 81:1-5; 89:4-8).

20. Those agreements specifically included the "Platform Access Agreement." (Ex. A, K. Monsterio Dep., p. 81:22-82:19; Ex. B, Platform Access Agreement).

21. The Platform Access Agreement that Monasterio signed and executed specifically provided that:

> 3.5  **Uber Maintained Insurance**. We may, in our sole discretion, choose to maintain auto insurance related to your Rides, but we are not required to provide you with any specific coverage for loss to you or your vehicle, unless we specifically describe it in an addendum to this PAA. We can change, reduce or cancel

> insurance that is maintained by us, if any, at any time without notice to you or authorization from you or authorization from you.

(Ex. A, K. Monasterio Dep., p. 82:24-83:10; Ex. B, Platform Access Agreement).

22. Monasterio acknowledged that 'addendum to the PAA' addressed available insurance coverage to her in Florida. (Ex. A, K. Monasterio Dep., p. 83:11-21; Ex. C, P2P Service Only Addendum – City Addendum, Florida).

23. The 'addendum to the PAA,' as acknowledged by Monasterio, provided, in pertinent part, as follows:

> Beginning when a User request for transportation has been accepted within the Uber application and ending when the last requesting User departs from your vehicle, a trip is ended, or a trip is cancelled, whichever is later, Company maintains primary automobile liability insurance in the amount of $1,000,000 for death, bodily injury and property damage. In addition, during this period Company maintains Medical Payments coverage in the amount of $5,000 per insured. If a driver holds Comprehensive and Collision coverage on his/her personal auto policy, then Company also maintains coverage for physical damage to the vehicle with a $2,500 deductible.

(Ex. A, K. Monasterio Dep., p. 83:11-21; Ex. C, P2P Service Only Addendum – City Addendum, Florida).

24. As Monasterio acknowledged, neither the Platform Access Agreement, nor the operative addendum, mention or suggest that UM/UIM Coverage would be provided. (Ex. A, K. Monasterio Dep., p. 87:19-24; Ex. B, Platform Access Agreement; Ex. C, P2P Service Only Addendum – City Addendum, Florida).

25. At some point, Monasterio claims she looked at the Uber App and saw a "Certificate of Insurance." (Ex. A, K. Monasterio Dep., p. 90:10-18; Cert. of Insurance [DE 12-4, p. 5]).

26. That document disclosed insurance coverage available, but did not contain the words "uninsured/underinsured motorist" anywhere. (Ex. A, K. Monasterio Dep., p. 90:19-21; Cert. of Insurance [DE 12-4, p. 5].

27. On May 6, 2022, Defendant, Monasterio, owned and was driving a 2022 Honda Accord, Vehicle Identification No. 1HGCV1F35LA129244 (the "Honda"). (Progressive's Amend. Compl., [DE 12 ¶ 34]; Rasier and Uber's Ans. to Amend. Compl., [DE 18, ¶ 34]; Monasterio's Ans., Demand for Jury Trial, Aff. Def., Crossclaim, and Counterclaim, [DE 22, ¶ 34]).

28. The Honda was not specifically identified in the Period 2-3 Policy by make, model, Vehicle Identification Number.

29. Monasterio, logged into the "Uber" ride share application and accepted a request on the Uber App to provide a ride for a passenger, Bradford Cavanaugh. (Progressive's Amend. Compl., [DE 12 ¶¶ 35-36]; Rasier and Uber's Ans. to Amend. Compl., [DE 18, ¶¶ 35-36]; Monasterio's Ans., Demand for Jury Trial, Aff. Def., Crossclaim, and Counterclaim [DE 22, ¶¶ 35-36]).

30. At some point prior to 10:45 a.m., Monasterio, picked up Cavanaugh at the Hollywood-Fort Lauderdale Airport. (Progressive's Amend. Compl., [DE 12 ¶ 37]; Rasier and Uber's Ans. to Amend. Compl., [DE 18, ¶ 37]; Monasterio's Ans., Demand for Jury Trial, Aff. Def., Crossclaim, and Counterclaim [DE 22, ¶¶ 37]).

31. During this pre-arranged ride, Monasterio, was driving the Honda when another individual, Michael Israel, lost control of his vehicle, spun through three lanes of traffic, and collided with Monasterio's vehicle. (Progressive's Amend. Compl., [DE 12 ¶ 38]; Rasier and Uber's Ans. to Amend. Compl., [DE 18, ¶ 38]; Monasterio's Ans., Demand for Jury Trial, Aff. Def., Crossclaim, and Counterclaim [DE 22, ¶ 38]).

32. As a result of this incident, Defendant, Monasterio, contends that she has sustained significant bodily injuries. (Progressive's Amend. Compl., [DE 12 ¶ 39]; Rasier and Uber's Ans. to Amend. Compl., [DE 18, ¶ 39]; Monasterio's Ans., Demand for Jury Trial, Aff. Def., Crossclaim, and Counterclaim [DE 22, ¶ 39]).

33. On August 17, 2022, Monasterio, filed a lawsuit in the Seventeenth Judicial Circuit in and for Broward County, Florida, Case No. CACE-22-012164 (the "Lawsuit"), in connection with the May 6, 2022 accident. (Progressive's Amend. Compl., [DE 12 ¶ 40]; Rasier and Uber's Ans. to Amend. Compl., [DE 18, ¶ 40]; Monasterio's Ans., Demand for Jury Trial, Aff. Def., Crossclaim, and Counterclaim [DE 22, ¶ 40]; State Compl., [DE 12-4]).

34. In the Complaint, Defendant, Monasterio, asserted claims against Progressive in which she contended that she is entitled to receive UM/UIM benefits pursuant to the Period 2-3 Policy. (Progressive's Amend. Compl., [DE 12 ¶ 41]; Rasier and Uber's Ans. to Amend. Compl., [DE 18, ¶ 41]; Monasterio's Ans., Demand for Jury Trial, Aff. Def., Crossclaim, and Counterclaim [DE 22, ¶ 41]; State Compl., [DE 12-4]).

35. Monasterio alleged that the incident occurred while she was engaged in a "prearranged ride;" with and individual who was under insured, and for which Progressive was obligated to provide UM/UIM Coverage under the Period 2-3 Policy. (Progressive's Amend. Compl., [DE 12 ¶¶ 43-46]; Rasier and Uber's Ans. to Amend. Compl., [DE 18, ¶¶ 43-46]; Monasterio's Ans., Demand for Jury Trial, Aff. Def., Crossclaim, and Counterclaim [DE 22, ¶¶ 43-46]; State Compl., [DE 12-4]).

36. Progressive filed the present action seeking a declaration (albeit set forth in multiple counts) that there was no UM/UIM Coverage under the Period 2-3 Policy. [DE 1, Compl.; DE 12; Amend. Compl.].

37. Defendants Uber and Rasier conceded that there was no UM/UIM coverage under the Period 2-3 Policy. [*See* DE 18, Uber/Rasier Answer to Declaratory Judgment Action].

38. Monasterio opposed the requested declaration, contending that: (i) Progressive had 'unclean hands,' and was somehow estopped or precluded from denying that there is UM/UIM Coverage under the Period 2-3 Policy; (ii) denying the material allegations of the Declaratory Judgment Action; and (iii) filing a Counter Claim essentially arguing the opposite (i.e., that the TNC Statute preclude reducing or waiving UM/UIM Coverage). (Monasterio's Ans., Demand for Jury Trial, Affirm. Def., Cross Claim, and Counterclaim [DE 22]).

[REMAINDER OF PAGE INTENTIONALLY BLANK]

CASE NO.: 0:23-cv-61354

Dated: January 25, 2024

Respectfully submitted,

*/s/ Patrick K. Dahl*
**Patrick K. Dahl, Esquire (084109)**
pdahl@morganakins.com
Florida Bar No. 084109
**MORGAN & AKINS, PLLC**
*Attorneys for Progressive Express Insurance Company*
501 E. Las Olas Boulevard
Suite 300
Ft. Lauderdale, FL 33301
Phone: (754) 255-3010
Fax: (215) 600-1303

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system on January 25, 2024, and the foregoing document is being served this day on all counsel or parties of record on the Service List below, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

　　/s/ Patrick K Dahl
Patrick K. Dahl, Esquire