# HOUSE OF REPRESENTATIVES
## FINAL BILL ANALYSIS

| | | | | |
|---|---|---|---|---|
| **BILL #:** | CS/HB 221 | **FINAL HOUSE FLOOR ACTION:** | | |
| **SUBJECT/SHORT TITLE** | Transportation Network Companies | 115   **Y's** | 0 | **N's** |
| **SPONSOR(S):** | Government Accountability Committee; Sprowls; Grant, J. and others | **GOVERNOR'S ACTION:** | | Approved |
| **COMPANION BILLS:** | CS/CS/SB 340 | | | |

## SUMMARY ANALYSIS

CS/HB 221 passed the House on April 5, 2017, and subsequently passed the Senate on April 19, 2017.

The bill provides a regulatory framework for transportation network companies (TNCs) in the state and it preempts to the state the regulation of TNCs. The bill:

- Defines terms.
- Provides that a TNC is not a common carrier, contract carrier, or motor carrier and does not provide taxicab or for-hire vehicle service.
- Requires a TNC to maintain an agent for service of process in the state.
- Requires a TNC to disclose certain information related to the collection of fares.
- Requires a TNC's digital network to display a photograph of the TNC driver and the license plate number of the TNC vehicle.
- Provides minimum insurance requirements for TNCs and TNC drivers and provides for certain TNC and insurer disclosures and exclusions.
- Provides that TNC drivers are independent contractors if certain conditions are met.
- Requires TNCs to implement a zero tolerance policy regarding drug and alcohol use.
- Establishes certain TNC driver requirements and prohibits persons from being a TNC driver if they have been convicted of certain crimes or a certain number of moving violations.
- Requires TNCs to submit to the Department of Financial Services an independent examination report and establishes penalties for noncompliance.
- Prohibits TNC drivers from accepting rides for compensation outside of the TNC's digital network and from soliciting or accepting street hails.
- Requires TNCs to adopt and TNC drivers to comply with policies related to nondiscrimination and disability access.
- Requires TNCs to maintain certain records relating to riders and TNC drivers.
- Authorizes airports and seaports to charge TNCs reasonable pickup fees consistent with what is charged for taxicabs.

The bill may have a fiscal impact on local governments currently collecting fees from TNCs; however, the fiscal impact is likely to be insignificant.

The bill was approved by the Governor on May 9, 2017, ch. 2017-12, L.O.F., and becomes effective July 1, 2017.

---

**This document does not reflect the intent or official position of the bill sponsor or House of Representatives.**
**STORAGE NAME**: h0221z.TIS
**DATE**: May 11, 2017

# I. SUBSTANTIVE INFORMATION

A. EFFECT OF CHANGES:

**Current Situation**
Florida law provides for certain regulations regarding taxis, limousines, and other for-hire transportation services, including minimum insurance requirements,[1] an exception to workers' compensation insurance requirements under certain circumstances,[2] and an exception to child restraint requirements.[3] Any additional regulation of these services is established at the local level.

For counties, to the extent not inconsistent with general or special law, the legislative and governing bodies have the power to carry on county government, including the power to license and regulate taxis, jitneys, limousines for hire, rental cars, and for-hire vehicles[4] that operate in the unincorporated areas of the county.

Municipalities have broad home rule powers authorizing them to enact legislation concerning any subject matter upon which the state Legislature may act, except:
- The subjects of annexation, merger, and exercise of extraterritorial power, which require general or special law pursuant to s. 2(c), Art. VIII of the State Constitution;
- Any subject expressly prohibited by the constitution;
- Any subject expressly preempted to state or county government by the constitution or by general law; or
- Any subject preempted to a county pursuant to a county charter adopted under the authority of ss. 1(g), 3, and 6(e), Art. VIII of the State Constitution.[5]

Since the regulation of taxis, limousines, and other for-hire vehicles has not been expressly preempted to the state or county government, municipalities may regulate these vehicles under their broad home rule powers.

Transportation Network Companies (TNCs)
For-hire vehicle services are undergoing changes with respect to business models most often associated with the provision of transportation to individuals, such as by taxi. Technological advances are resulting in new methods for consumers to arrange and pay for transportation, including software applications that make use of mobile smartphones. Some states and local governments have taken steps to recognize and regulate companies using these new technologies, which describe themselves as "transportation network companies" and not for-hire vehicles.

---

[1] Section 324.032, F.S.
[2] Section 440.02(15)(c)10., F.S.
[3] Section 316.613, F.S.
[4] Section 320.01(15), F.S., defines the term "for-hire vehicle" as any motor vehicle, when used for transporting persons or goods for compensation; let or rented to another for consideration; offered for rent or hire as a means of transportation for compensation; advertised in a newspaper or generally held out as being for rent or hire; used in connection with a travel bureau; or offered or used to provide transportation for persons solicited through personal contact or advertised on a "share-expense" basis. When goods or passengers are transported for compensation in a motor vehicle outside a municipal corporation of this state, or when goods are transported in a motor vehicle not owned by the person owning the goods, such transportation is "for hire." The carriage of goods and other personal property in a motor vehicle by a corporation or association for its stockholders, shareholders, and members, cooperative or otherwise, is transportation "for hire." The following are not included a for-hire vehicle: a motor vehicle used for transporting school children to and from school under contract with school officials; a hearse or ambulance when operated by a licensed embalmer or mortician or his or her agent or employee in this state; a motor vehicle used in the transportation of agricultural or horticultural products or in transporting agricultural or horticultural supplies direct to growers or the consumers of such supplies or to associations of such growers or consumers; a motor vehicle temporarily used by a farmer for the transportation of agricultural or horticultural products from any farm or grove to a packinghouse or to a point of shipment by a transportation company; or a motor vehicle not exceeding 1.5 tons under contract with the Government of the United States to carry United States mail, provided such vehicle is not used for commercial purposes.
[5] Section 166.021(3), F.S.

Currently, Florida law does not recognize TNCs, but some local governments are in various stages of imposing regulations on TNCs that vary by jurisdiction.

<u>Background Check Databases</u>
Many different databases exist to conduct background checks and different databases are used for different types of background checks. However, there does not appear to be a single government database that contains complete and up-to-date records regarding a person's criminal history.[6]

<u>The National Sex Offender Public Website</u>
The National Sex Offender Public Website (NSOPW) contains public information regarding individuals who are required to register through a state's sex offender registry, and consists of the individual registries and public registry websites operated by all 50 states, the District of Columbia, four of the principal United States territories, as well as over 70 federally-recognized Indian Tribes. The NSOPW contains information on those who have committed sexually violent offenses against adults and children, as well as certain sexual contact and other crimes against victims who are minors. Information about individuals who appear on these lists depends on the individual states' registry requirements. The NSOPW is administered through the U.S. Department of Justice.[7]

**Proposed Changes**

<u>State Regulation</u>
The bill creates s. 627.748, F.S., establishing a regulatory framework for TNCs in the state. It also preempts to the state the regulation of TNCs. Specifically, a county, municipality, special district, airport authority, port authority, or other local governmental entity or subdivision may not:
- Impose a tax on or require a license for a TNC, TNC driver, or TNC vehicle if such tax or license relates to providing prearranged rides;
- Subject a TNC, TNC driver, or TNC vehicle to any rate, entry, operation, or other requirement of the county, municipality, special district, airport authority, port authority, or other local governmental entity or subdivision; or
- Require a TNC or TNC driver to obtain a business license or any other type of similar authorization to operate within the local governmental entity's jurisdiction.

The bill does not prohibit an airport or seaport from charging reasonable pickup fees consistent with any pickup fees charged to taxicab companies at that airport or seaport for their use of the airport's or seaport's facilities or prohibit the airport or seaport from designating locations for staging, pickup, and other similar operations at the airport or seaport.

<u>General Provisions</u>
The bill defines the term "TNC" as an entity operating in this state using a digital network to connect a rider[8] to a TNC driver, who provides prearranged rides. A TNC is not deemed to own, control, operate, direct, or manage the TNC vehicles or TNC drivers that connect to its digital network, except where agreed to by written contract, and is not a taxicab association or for-hire vehicle owner. The term does not include entities arranging nonemergency medical transportation for individuals who qualify for Medicaid or Medicare pursuant to a contract with the state or a managed care organization, but does not prohibit a TNC from providing prearranged rides to individuals who qualify for Medicaid or Medicare if it meets the requirements of s. 627.748, F.S.

---

[6] *See* NAPBS, *The Facts about Background Checks*, available at: http://pubs.napbs.com/pub.cfm?id=0822433E-CAEA-32D3-A1F2-C4970C002321 (last visited January 31, 2017).
[7] U.S. Department of Justice, Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking (SMART), https://www.nsopw.gov/en/Home/About (last visited January 30, 2017).
[8] The bill defines the term "rider" to mean an individual who uses a digital network to connect with a TNC driver in order to obtain a prearranged ride in the TNC driver's TNC vehicle between points chosen by the rider.

The bill defines a "TNC driver" as an individual who receives connections to potential riders and related services from a TNC and, in return for compensation, uses a TNC vehicle to offer or provide a prearranged ride to a rider upon connection through a digital network. The bill specifies that a TNC or TNC driver is not a common carrier, contract carrier, or motor carrier and does not provide taxicab or for-hire vehicle service.

The bill defines a "TNC vehicle" as a vehicle that is used by a TNC driver to offer or provide a prearranged ride and that is owned, leased, or otherwise authorized to be used by the TNC driver. A vehicle that is let or rented to another for consideration may be used as a TNC vehicle. The bill specifies that a taxicab, jitney, limousine, or for-hire vehicle is not a TNC vehicle.

The bill also defines the term "prearranged ride" as the provision of transportation by a TNC driver to a rider, beginning when a TNC driver accepts a ride requested by a rider through a digital network[9] controlled by a TNC, continuing while the TNC driver transports the requesting rider, and ending when the last requesting rider exits from and is no longer occupying the TNC vehicle. The term does not include a taxicab, for-hire vehicle, or street hail[10] service and does not include ridesharing,[11] carpool,[12] or any other type of service in which the driver receives a fee that does not exceed the driver's cost to provide the ride.

The bill provides that a TNC driver is not required to register a TNC vehicle as a commercial motor vehicle or a for-hire vehicle. It requires the TNC's digital network to display the TNC driver's photograph and the TNC vehicle's license plate number before the rider enters the TNC vehicle.

If a fare is collected from a rider, the bill requires the TNC to disclose the fare or fare calculation method on its website or within the online-enabled technology application service before beginning the prearranged ride. If the fare is not disclosed, the rider must have the option to receive an estimated fare before beginning the prearranged ride. In addition, the bill requires a TNC to transmit to the rider an electronic receipt within a reasonable period of time after the completion of a ride. The receipt must list the origin and destination of the ride, total time and distance of the ride, and total fare paid.

The bill requires a TNC to designate and maintain an agent for service of process in this state.[13]

Insurance Requirements
Beginning July 1, 2017, a TNC driver, or a TNC on behalf of the TNC driver, must maintain primary automobile insurance that:
- Recognizes that the TNC driver is a TNC driver or otherwise uses a vehicle to transport riders for compensation; and
- Covers the TNC driver while the TNC driver is logged on to the TNC's digital network or while the TNC driver is engaged in a prearranged ride.

---

[9] The bill defines the term "digital network" as any online-enabled technology application service, website, or system offered or used by a TNC which enables the prearrangement of riders with TNC drivers.

[10] The bill defines the term "street hail" as an immediate arrangement on a street with a driver by a person using any method other than a digital network to seek immediate transportation.

[11] Section 341.031(9)(a), F.S., defines "ridesharing" as an arrangement between persons with a common destination, or destinations, within the same proximity, to share the use of a motor vehicle on a recurring basis for round-trip transportation to and from their place of employment or other common destination. For purposes of ridesharing, employment is deemed to commence when an employee arrives at the employer's place of employment to report for work and is deemed to terminate when the employee leaves the employer's place of employment, excluding areas not under the control of the employer. However, an employee is deemed to be within the course of employment when the employee is engaged in the performance of duties assigned or directed by the employer, or acting in the furtherance of the business of the employer, irrespective of location.

[12] Section 450.28(3), F.S., defines "carpool" as an arrangement made by the workers using one worker's own vehicle for transportation to and from work and for which the driver or owner of the vehicle is not paid by any third person other than the members of the carpool.

[13] Section 48.091, F.S., requires any corporation doing business in the state to have a registered agent and registered office in the state.

While a TNC driver is logged on to the digital network but is not engaged in a prearranged ride, the TNC or TNC driver must have automobile insurance that provides:
- Primary automobile liability coverage of at least $50,000 for death and bodily injury per person, $100,000 for death and bodily injury per incident, and $25,000 for property damage.
- Personal injury protection benefits that meet the minimum coverage amounts required under the Florida Motor Vehicle No-Fault Law.[14] The amount of insurance required is $10,000 for emergency medical disability, $2,500 non-emergency medical, and $5,000 for death.[15] It is notable that no-fault coverage is for the named insured (TNC driver), relatives residing in the same household, persons operating the insured motor vehicle, riders in the motor vehicle, and other persons struck by the motor vehicle and suffering bodily injury while not an occupant of a self-propelled vehicle.[16]
- Uninsured and underinsured vehicle coverage.[17]

When a TNC driver is engaged in a prearranged ride, the automobile insurance must provide:
- Primary automobile liability coverage of at least $1 million for death, bodily injury, and property damage.
- Personal injury protection benefits that meet the minimum coverage amounts required of a limousine under the Florida Motor Vehicle No-Fault Law. Pursuant to s. 627.733(1)(a), F.S., limousines are exempt from the Florida Motor Vehicle No-Fault Law. However, if the Legislature removes this exemption or makes certain parts of the Florida Motor Vehicle No-Fault Law applicable to limousines, the changes in that law would also apply to TNCs and their drivers.
- Uninsured and underinsured vehicle coverage.

The coverage requirements may be satisfied by automobile insurance maintained by the TNC driver, an automobile insurance policy maintained by the TNC, or a combination of automobile insurance policies maintained by the TNC driver and the TNC.

For purposes of comparison, s. 324.032, F.S., requires for-hire passenger transportation vehicles to carry limits of $125,000/$250,000 for bodily injury and $50,000 for property damage.[18] The bill requires less coverage than required for for-hire passenger transportation vehicles when a driver is logged onto the TNCs digital network, but is not engaged in TNC service. However, the bill requires more coverage than required for for-hire passenger transportation vehicles when a driver is engaged in providing TNC service.

The bill provides that if the TNC driver's insurance policy has lapsed or does not provide the required coverage, the insurance maintained by the TNC must provide the required coverage, beginning with the first dollar of a claim, and have the duty to defend such claim. Coverage under an automobile insurance policy maintained by the TNC must not be dependent on a personal automobile insurer first denying a claim, and a personal automobile insurance policy is not required to first deny a claim. The required insurance must be provided by an insurer authorized to do business in this state which is a member of the Florida Insurance Guaranty Association[19] or an eligible surplus lines[20] insurer that has a

---

[14] Sections 627.730-627.7405, F.S.
[15] Section 627.736, F.S.
[16] Section 627.736(1), F.S.
[17] Uninsured and underinsured vehicle coverage is required by s. 627.727, F.S.
[18] Section 324.032(1)(a), F.S.
[19] The Florida Insurance Guaranty Association, which was created by legislation, handles the claims of insolvent property and casualty insurance companies. Its membership is composed of all Florida direct writers of property and casualty insurance. http://www.figafacts.com/ (Last visited January 30, 2017).
[20] "Surplus Lines" is "property/casualty insurance coverage that isn't available from insurers licensed in the state, called admitted companies, and must be purchased from a non-admitted carrier. Examples include risks of an unusual nature that require greater flexibility in policy terms and conditions than exist in standard forms or where the highest rates allowed by state regulators are considered inadequate by admitted companies. Laws governing surplus lines vary by state." http://www.iii.org/services/glossary/s? (Last visited January 30, 2017).

superior, excellent, exceptional, or equivalent financial strength rating by a rating agency acceptable to the Office of Insurance Regulation.

Insurance satisfying the above requirements is deemed to satisfy the financial responsibility requirement for a motor vehicle under the Financial Responsibility Law of 1955[21] and the security required under s. 627.733, F.S.,[22] for any period when the TNC driver is logged onto the digital network or engaged in a prearranged ride.

A TNC driver is required to carry proof of insurance coverage with him or her at all times while using a TNC vehicle in connection with a digital network. In the event of an accident, a TNC driver must provide this insurance coverage information to any party directly involved in the accident or the party's designated representative, automobile insurers, and investigating police officers. Proof of financial responsibility may be presented through an electronic device, such as a digital phone application.[23] Upon request, a TNC driver must also disclose to any party directly involved in the accident or the party's designated representative, automobile insurers, and investigating police officers whether the driver was logged on to a digital network or was engaged in a prearranged ride at the time of the accident.

If a TNC's insurer makes a payment for a claim covered under comprehensive coverage or collision coverage, the TNC must cause its insurer to issue the payment directly to the business repairing the vehicle or jointly to the owner of the vehicle and the primary lienholder on the covered vehicle.

Before a TNC driver can accept a request for a prearranged ride on the digital network, the bill requires the TNC to disclose in writing to the TNC driver:
- The insurance coverage, including the types of coverage and the limits for each coverage, which the TNC provides while the TNC driver uses a TNC vehicle in connection with the TNC's digital network;
- That the TNC driver's own automobile insurance policy might not provide any coverage while the TNC driver is logged on to the digital network or is engaged in a prearranged ride depending on the terms of the TNC driver's own automobile insurance policy; and
- That the provision of rides for compensation that are not prearranged rides subjects the TNC driver to the coverage requirements imposed under s. 324.032(1), F.S.,[24] and that failure to meet such coverage requirements subjects the TNC driver to penalties provided in s. 324.221, F.S.,[25] up to and including a misdemeanor of the second degree.[26]

An insurer that provides an automobile liability insurance policy under part XI of Ch. 627, F.S.,[27] may exclude any and all coverage afforded under the policy issued to an owner or operator of a TNC vehicle while driving that vehicle for any loss or injury that occurs while a TNC driver is logged on to a digital network or while a TNC driver provides a prearranged ride. This right to exclude all coverage may apply to any coverage included in an automobile insurance policy, including, but not limited to:
- Liability coverage for bodily injury and property damage;
- Uninsured and underinsured motorist coverage;
- Medical payments coverage;
- Comprehensive physical damage coverage;
- Collision physical damage coverage; and
- Personal injury protection.

---

[21] Chapter 324, F.S.
[22] Section 627.733, F.S., provides that required security under the Florida Motor Vehicle No-Fault Law.
[23] Section 316.646, F.S., authorizes the display of proof of automobile insurance in a digital format.
[24] Section 324.032(1), F.S., provides insurance requirements for taxicabs, limousines, and other for-hire passenger transportation.
[25] Section 324.221, F.S., provides penalties related to the Financial Responsibility Law of 1955.
[26] A misdemeanor of the second degree is punishable by a term of imprisonment not to exceed 60 days and a fine not to exceed $500. Sections 775.082(4)(b) and 775.083(1)(e), F.S.
[27] Part XI of Ch. 627, F.S., relates to motor vehicle and casualty insurance contracts.

The exclusions apply notwithstanding any requirement under the Financial Responsibility Law of 1955.[28]

The bill does not require a personal automobile insurance policy to provide coverage while the TNC driver is logged on to a digital network, while the TNC driver is engaged in a prearranged ride, or while the TNC driver otherwise uses a vehicle to transport riders for compensation.

The bill's insurance provisions must not be construed to require an insurer to use any particular policy language or reference the above statutes in order to exclude any and all coverage for any loss or injury that occurs while a TNC driver is logged on to a digital network or while a TNC driver provides a prearranged ride. The bill does not preclude an insurer from providing primary or excess coverage for the TNC driver's vehicle by contract or endorsement.

An automobile insurer that excludes the coverage described above does not have a duty to defend or indemnify any claim expressly excluded thereunder. The bill does not invalidate or limit an exclusion contained in a policy for vehicles used to carry persons or property for a charge or available for hire by the public, including a policy in use or approved for use in this state before July 1, 2017. An automobile insurer that defends or indemnifies a claim against a TNC driver, which is excluded under the terms of the policy, has a right of contribution against other insurers that provide automobile insurance to the same TNC driver in satisfaction of the coverage requirements of s. 316.68(7), F.S., at the time of loss.

In a claims coverage investigation and upon request by a directly involved party or any insurer of the TNC driver, a TNC must immediately provide the precise times that the TNC driver logged on and off the digital network in the 12-hour period immediately preceding and in the 12-hour period immediately following the accident. Upon request by any other insurer involved in the particular claim, an insurer providing coverage pursuant to s. 316.68, F.S., must disclose, the applicable coverages, exclusions, and limits provided under any automobile insurance maintained in order to satisfy the bill's insurance requirements.

<u>TNC Drivers</u>
The bill provides that a TNC driver is an independent contractor and not an employee of the TNC if all of the following conditions are met:
- The TNC does not unilaterally prescribe specific hours during which the TNC driver must be logged on to the TNC's digital network;
- The TNC does not prohibit the TNC driver from using digital networks from other TNCs;
- The TNC does not restrict the TNC driver from engaging in any other occupation or business; and
- The TNC and TNC driver agree in writing that the TNC driver is an independent contractor with respect to the TNC.

Before an individual is authorized to accept a ride request through a digital network, the bill requires the:
- Individual to submit an application to the TNC that includes information regarding his or her address, age, driver license, motor vehicle registration, and other information required by the TNC;
- TNC to conduct, or have a third party conduct, a local and national criminal background check that includes a search of the Multi-State/Multi-Jurisdiction Criminal Records Locator or other similar commercial nationwide database with validation of any records through a primary source search and NSOPW; and
- TNC to obtain and review, or have a third party obtain and review, a driving history research report for the applicant.

---

[28] Chapter 324, F.S.

The TNC must conduct the required background check for a TNC driver every three years.

The TNC may not authorize an individual to act as a TNC driver on its digital network if the driving history research report reveals that the individual has had more than three moving violations in the prior three-year period. The TNC may not authorize an individual to act as a TNC driver on its digital network if the initial background check or any subsequent background check reveals that the individual:

- Has been convicted within the past five years of a felony; misdemeanor for driving under the influence of drugs or alcohol, reckless driving, hit and run, or fleeing or attempting to elude a law enforcement officer; or misdemeanor for a violent offense, sexual battery, or crime of lewdness or indecent exposure;[29]
- Has been convicted within the past three years of driving with a suspended or revoked license;
- Is a match in the NSOPW;
- Does not possess a valid driver license; or
- Does not possess proof of registration for the motor vehicle used to provide prearranged rides.

The bill provides that no later than January 1 of every other year beginning in 2019, a TNC must submit to the Department of Financial Services (DFS) an examination report prepared by an independent certified public accountant for the sole purpose of verifying that the TNC is in compliance with the insurance and driver requirements. The report must expressly indicate whether the TNC was compliant or noncompliant with the statutory requirements relating to insurance and driver requirements, and must be prepared in accordance with applicable attestation standards established by the American Institute of Certified Public Accountants. The TNC bears all costs associated with preparing and submitting the report.

Within 30 days after receipt of the report, DFS must impose a fine of $10,000 if the report includes a finding that the TNC has been noncompliant with the insurance and driver requirements. A TNC that has been found noncompliant is required to submit another examination report no later than January 1 of the following year. This subsequent report must evaluate the records of the TNC for the timeframe since the previous examination report to determine whether the TNC has been compliant with the insurance and driver requirements. If the subsequent report includes a finding that the TNC has been noncompliant with the insurance and driver requirements, DFS must impose a fine of $20,000 on the TNC. A TNC that fails to timely submit any required report is subject to an additional fine of $10,000 for noncompliance. Fine revenues may be used by DFS to defray expenses associated with the administration of its regulatory duties.

Any fine imposed by DFS must be payable within 21 days after receipt of notice from the department. Payment of the fine is stayed by the filing of a petition for an administrative proceeding with the agency clerk for DFS. Failure to timely petition waives any rights to an administrative hearing.

The bill also authorizes DFS to seek injunctive relief against a TNC that fails to submit the required examination reports.

Prohibited Conduct
The bill prohibits a TNC driver from accepting a ride for compensation other than by a rider arranged through a digital network. TNC drivers are prohibited from soliciting or accepting street hails.
A TNC may not alter the presentation of information on its digital network to an enforcement official for the purpose of thwarting or interfering with enforcement or oversight of the TNC.

Zero-tolerance Policy
The bill requires TNCs to implement a zero-tolerance policy regarding the activities of its drivers while accessing the digital network. The zero-tolerance policy must address the use of drugs or alcohol while a TNC driver is providing a prearranged ride or is logged on to the digital network. The TNC must provide notice of the policy on its website, as well as procedures to report a complaint about a TNC

---

[29] This is pursuant to Ch. 800, F.S.

driver a rider reasonably suspects was under the influence of drugs or alcohol during the course of the ride.

Upon receiving a rider's complaint alleging a violation of the zero-tolerance policy, the TNC must suspend a TNC driver's ability to accept ride requests through the TNC's digital network as soon as possible and conduct an investigation into the reported incident. The TNC driver's suspension must last the duration of the investigation.

<u>Nondiscrimination and Accessibility</u>
The bill requires a TNC to adopt a policy of nondiscrimination with respect to riders and potential riders and is required to notify TNC drivers of its nondiscrimination policy. The TNC driver must comply with the TNC's nondiscrimination policy and all applicable laws regarding nondiscrimination against riders and potential riders and relating to accommodation of service animals. A TNC may not impose additional charges for providing services to a person who has a physical disability because of the person's disability.

The bill requires a TNC that contracts with a governmental entity to provide paratransit services to comply with all applicable state and federal laws related to individuals with disabilities.

The bill requires a TNC to reevaluate any decision to remove a TNC driver's authorization to access its digital network due to a low qualify rating by riders if the TNC driver alleges that the low quality rating was because of a characteristic identified in the TNC's nondiscrimination policy and there is a plausible basis for the allegation.

<u>Records</u>
The bill requires a TNC to maintain individual ride records for at least one year after the date on which each ride is provided, and individual records of TNC drivers for at least one year after the date on which the TNC driver's relationship with the TNC ends.

## II. FISCAL ANALYSIS & ECONOMIC IMPACT STATEMENT

A. FISCAL IMPACT ON STATE GOVERNMENT:

1. Revenues:

   None.

2. Expenditures:

   The bill may have a fiscal impact on DFS; however, the department is authorized to use fine revenues to defray expenses associated with the administration of its regulatory duties.

B. FISCAL IMPACT ON LOCAL GOVERNMENTS:

1. Revenues:

   The bill preempts to the state the regulation of TNCs. To the extent municipalities, counties, and other governmental entities are imposing fees on TNCs, they will experience an indeterminate, but likely insignificant, negative fiscal impact.

   The bill does not prohibit airports or seaports from charging TNCs reasonable pickup fees as long as they are consistent with those charged to taxicab companies. This may provide a positive fiscal impact to airports and seaports, but the total fiscal impact is unknown at this time.

    2. Expenditures:

    None.

  C. DIRECT ECONOMIC IMPACT ON PRIVATE SECTOR:

    TNCs may see a reduction in costs associated with uniform regulation throughout the state. TNCs may incur some additional costs as a result of the requirement to prepare and submit a biennial examination report.

  D. FISCAL COMMENTS:

    None.