UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:23-cv-61354

PROGRESSIVE EXPRESS INSURANCE COMPANY,

    Plaintiff,

vs.

RASIER-DC, LLC, a foreign limited liability company; UBER TECHNOLOGIES, INC., a foreign corporation; and KARINA MONASTERIO, individually,

    Defendants.
_____/

**PROGRESSIVE'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Plaintiff/Counter-Defendant, Progressive Express Insurance Company ("Progressive"), by and through its attorneys, Morgan & Akins, PLLC, in accordance with Rules 7.1 and 56.1[1] of the Local Rules for the United States District Court for the Southern District of Florida, submits this reply memorandum in further support of its Motion for Summary Judgment. [DE 30; DE 30-1]. In support thereof, Progressive states as follows:

**ARGUMENT**

**A.   THE TEXT OF FLORIDA'S TNC STATATUTE DOES NOT MANDATE THAT UM/UIM COVERAGE IS PROVIDED**

Monasterio's primary argument to oppose summary judgment (contrary to her description), is not based on Florida's TNC Statute's[2] statutory text, but, rather, upon a misguided attempt to persuade this Court to rewrite the statute from the bench, adopting an untenable statutory interpretation and effectively removing the term "as required by s. 627.727" from the statute. [DE

---

[1] Progressive has, consistent with Local Rule 56.1(b)(3) of the Local Rules for the United States District Court for the Southern District of Florida, contemporaneously filed "Progressive's Reply Statement of Material Facts," addressing the additional facts contained within "Defendant's Response to Statement of Facts." [DE 38-1, pp. 4-5].

[2] Capitalized/defined terms have the same meaning as set forth in "Progressive's Memorandum in Support of Motion for Summary Judgment." [DE 30-1].

38, pp. 7-13]. This argument fails from the outset as it is predicated upon a flawed premise; an obligation to provide UM/UIM Coverage cannot be distilled from the text of Florida's TNC Statute.

Monasterio suggests that Florida's legislature intended to mandate that TNC policies provide UM/UIM. [DE 30, pp. 8-9]. If that was the purported intent, then, presumably, it would be reflected in express terms such as setting forth a specific amount of coverage or a specific provision providing that coverage could not be waived or modified. But, Florida's TNC Statute contains no such express provisions concerning UM/UIM Coverage. Florida's legislature, in enacting § 627.748, could have, but did not, specify the amount of UM/UIM Coverage required. It included specific amounts for other types of insurance. *See* Fla. Stat. § 627.748(7)(c)(1)(a.) (mandating "liability coverage of at least $1 million for death, bodily injury, and property damage."). Section 627.748(c), only imposes an obligation to obtain uninsured and underinsured motorist coverage "as required by s. 627.727." Fla. Stat. § 627.748(7)(c). Similarly, it could have expressly precluded that coverage could not be reduced, rejected, or eliminated. Again, it did not, providing only that uninsured and underinsured motorist coverage was to be provided "as required by s. 627.727." Fla. Stat. §627.727(7)(c). Put simply, the purported 'legislative intent,' underlying Monasterio's conclusion cannot be discerned from the statute.

Monasterio contends that, despite the legislature's omission of any provisions mandating UM/UIM Coverage in any particular amount or an express prohibition upon reduction or rejection of UM/UIM Coverage, such terms should be inferred because: (i) the statute includes insurance requirements, including a reference to UM/UIM Coverage; and (ii) the statute creates and obligation that, in the event that the driver's personal insurance failed to provide coverage, the TNC policy would become primary. [DE 38, pp. 7-8]. But, neither Monasterio's argument nor the statutory provisions she cites support the conclusion that UM/UIM Coverage is mandated by Florida's TNC Statute.

First, Monasterio's construction violates the 'plain meaning,' rule. Florida applies the plain meaning rule as it relates to statutory interpretation. "Where the language of a statute is clear an unambiguous, there is no room for interpretation." *All Family Clinic of Daytona Beach, Inc. v. State Farm Mut. Auto. Ins. Co.*, 685 F.Supp.2d 1297, 1301 (S.D. Fla. 2010). Here, Florida's TNC Statute specifically provides that UM/UIM Coverage is to be provided "as required by s. 627.727." Fla. Stat. §627.748(7)(c). The TNC Statute's express reference to uninsured and underinsured

motorist coverage "as required by s. 627.727," reflects the clear intent that the requirements of section 627.727 would control whether, and how much, uninsured or underinsured coverage would be provided.

Second, the statutory provisions cited by Monasterio do not support either her conclusion or warrant a different result. Section 627.748(7)(c) only imposes an obligation to obtain uninsured and underinsured motorist coverage "as required by s. 627.727." Fla. Stat. §627.748(7)(c). Furthermore, §627.748(7)(d), mandates only that the "TNC must provide the coverage required under this subsection." The only UM/UIM coverage required under the subsection is "uninsured and underinsured vehicle coverage as required by §627.727." *Id*.

Third, Monasterio's attempt to divine a legislative mandate to impose a heightened burden to TNC companies or insurers based upon some unarticulated desire to fundamentally change the insurance marketplace in Florida for TNC companies and their carriers falls flat. [DE 38, p. 7]. If that was the ultimate purpose, referencing and adopting[3] Florida's existing UM/UIM Statute would certainly not effectuate change. Rather, it is more consistent with maintaining the status *quo*.

\* \* \*

Progressive is not, contrary to Monasterio's suggestion, myopically focusing upon the rejection language in subsection (1). [DE 38, p. 10]. The ultimate point is that regardless of what type, or even whether, a specifically insured vehicle is involved, Florida's UM/UIM Statute expressly permits such coverage to be reduced or eliminated. *See* Fla. Stat. §§ 627.727(1) and (2); *Brown-Peterkin v. Williamson*, 307 So. 2d 45 (Fla. 4th DCA); *Geico Indem. Co. v. Perez*, 260 So. 3d 342 (Fla. 3d DCA 2018); *Hooper v. Zurich Ins. Co.*, 789 So. 2d 368 (Fla. 2d DCA 20011); *Tres v. Royal Surplus Lines Ins. Co.*, 705 So. 2d 643 (Fla. 3d DCA 1998). Similarly, Progressive is not advocating that it has no obligation to ever offer UM/UIM Coverage. [*See* DE 38, p. 11]. Quite to the contrary; Florida's UM/UIM Statute sets forth the requirements for reducing or eliminating UM/UIM Coverage; requirements that Progressive complied with.

Monasterio, not Progressive, is attempting a judicial statutory modification by eliminating "as required by s. 627.727" from the TNC Statute. Progressive is not, contrary to Monasterio's position, attempting to modify the plain language of the TNC Statute. [DE 38, p.8]. Rather, the

---

[3] As Monasterio concedes, the TNC Statute's incorporation of the UM/UIM Statute "invokes the entire section of Florida statutes that regulates UM/UIM insurance." [DE 38, p. 9].

TNC Statute's plain language provides that UM/UIM coverage is to be provided "as required by s 627.727." Progressive complied with its obligation to its insured who rejected coverage.

B. **MONASTERIO'S INTERPRETATION REQUIRES ONE TO DISREGARD THE REQUIREMENTS OF SECTION 627.727; SOMETHING THAT CANNOT BE RECONCILED WITH BASIC PRINCIPLES OF STATUTORY CONSTRUCTION**

    1. **Monasterio's Statutory Interpretation Approach that Promotes Statutory Disharmonization**

What amount of UM/UIM Coverage does Monasterio contend that Progressive was required to provide? It is interesting to note that nowhere within the response does Monasterio address or discuss what amount of uninsured motorist coverage is supposedly mandated by either Florida's TNC Statute or Fla. Stat. § 627.727. Such an omission is both telling and fatal as it highlights the fundamental problem with Monasterio's approach; her position requires one to selectively apply Florida's UM/UIM Statute to establish the amount of coverage, but simultaneously ignore the remaining provisions in the same statute that specifically provide that such coverage can be reduced or eliminated. Such a position is untenable.

Monasterio concedes, as she must, that the phrase "as required by s. 627.727" in Florida's TNC statute "refers to and invokes the entire section of Florida statutes that regulates UM/UIM insurance." [DE 38, p. 9]. But, despite that concession, she advocates for an interpretation that excludes, rather than invokes, significant portions of the statute, the entirety of which she claims was invoked. Such a position is untenable.

As noted in the underlying Memorandum, Florida's UM/UIM Statute, neither mandates nor requires any person or entity to maintain UM/UIM insurance. [DE 30-1, pp. 12-13]. Rather, it sets a default – one that can be reduced, or eliminated. [DE 30-1, pp. 12-13]. Section 627.727(2) sets forth both a general default amount of UM/UIM Coverage that would be provided absent conduct by the insured <u>and, in the same section,</u> expressly authorizes the insured to obtain lower or to completely reject such coverage. *See* Fla. Stat. § 627.727(2).[4] But, in order to accept

---

[4] For specifically insured motor vehicles, "coverage shall be not less than the limits of bodily injury liability insurance purchased by the named insured, <u>or such lower limit complying with the rating plan of the company as may be selected by the named insured.</u>" Fla. Stat. § 627.727(2). For all other vehicles, the insurer issuing such a policy, "<u>shall make available as part of the application for such policy,</u> and at the written request of an insured, limits up to the bodily injury liability limits contained in such a policy or $1 million, whichever is less." *Id.* But, all that is required is that such coverage be made available, there is no requirement that it be provided; the insured must accept that coverage. *Hooper v. Zurich Ins. Co.*, 789 So. 2d 368 (Fla. 2d DCA 2001).

4

Monasterio's approach, this Court would have to ignore the provisions of § 627.727 that allow for lower limits or complete rejection of UM/UIM Coverage.

In contrast, Progressive's interpretation reconciles the two – recognizing that the TNC Statute's invocation of § 627.727 is consistent with the language and meaning and allows for co-existence. As noted by Progressive, the TNC Statute's reference and incorporation of § 627.727(2) simply allows for consistent application of UM/UIM Coverage, not a judicial blue-penning to determine what portions of § 627.727 are included and excluded from the TNC Statute as advocated by Monasterio.

### 2. The Statute Only Becomes Ambiguous if One Were to Adopt Monasterio's Interpretation – One that Not Even Her Authority Can Support

Monasterio contends that the TNC Statute's silence concerning the limits of UM/UIM Coverage required under Florida's TNC Statute "highlights a potential ambiguity in the law." [DE 38, p. 11]. But, there is only an ambiguity if one adopts Monasterio's strained construction and ignores Florida's UM/UIM Statute. Florida's UM/UIM statute is not ambiguous. *See O'Brien v. State Farm Fire & Cas. Co.*, 999 So. 2d 1081, 1086 (Fla. 1st DCA 2009). Florida's UM/UIM Statute expressly authorizes the insured to select the amount of UM/UIM Coverage it wants, if any, provided that such a determination is made appropriately (i.e., in writing for a specifically insured vehicle; offered for all others). Fla. Stat. § 627.727(1) and (2). The only way the TNC Statute becomes ambiguous is, again, if one eliminates the insured's right to select, reduce or reject UM/UIM Coverage – then the entirety of the provision in the TNC Statute would not make sense because the TNC Statute would be devoid of any context to allow one to determine the most basic question – how much UM/UIM Coverage does the statute supposedly require?

Even the very authority Monasterio cites to suggest that UM/UIM Coverage was implicitly required, despite the absence of any express mandate in the statutory text, cannot salvage her position. The very 'House Bill' analysis submitted by Monasterio does not refer to some mandatory amount of UM/UIM Coverage but, rather, again references and incorporates Florida's UM/UIM Statute. [DE 38-3, p. 5, n. 17].

**C.   THERE IS NO LEGITIMATE FACTUAL DISPUTE CONCERNING THE FACT THAT THERE WAS A VALID REJECTION OF UM/UIM COVERAGE**

**1.   As Monasterio Concedes that the Period 2-3 Policy Did not Insure a Specific Automobile, All that Was Required was for Progressive to Advise that $1 Million of UM/UIM Coverage Was Available**

As Monasterio concedes, the Period 2-3 Policy does not provide coverage for a "specifically insured or identified motor vehicle," ([DE 38, p. 6; DE 38, p. 10]). Therefore, there is no obligation to either carry or provide UM/UIM Coverage. In such a circumstance, the requirements of §627.727(2) operate and control. *See* Fla. Stat. §627.727(2); *O'Brien v. State Farm Fire & Cas. Co.*, 999 So. 2d 1081 (Fla. 1st DCA 2009). Section 627.727(2) provides, in pertinent part, that:

> The limits set forth in this subsection, and the provisions of subsection (1) which require uninsured motorist coverage to be provided in every motor vehicle policy delivered or issued for delivery in this state, do not apply to any policy which does not provide primary liability insurance that includes coverage for liabilities arising from the maintenance, operation or use of a specifically insured motor vehicle."

Fla. Stat. § 627.727(2) (emphasis added). Section 627.727(2) expressly provides: (i) that the requirement of insurance limits equal to bodily injury limits does not apply in such circumstances; and (ii) the insurer is required only to make available, as part of the application, and at the written request of the insured, UM/UIM coverage equal to the bodily injury limits or $1 Million, whichever is less. Fla. Stat. §627.727(2). Stated differently, pursuant to Fla. Stat. §627.727(2), there is no obligation to provide insurance. Rather, there is only an obligation to notify that coverage is available. *See* Fla. Stat. §627.727(2); *O'Brien v. State Farm Fire & Cas. Co.*, 999 So. 2d 1081 (Fla. 1st DCA 2009); *Hooper v. Zurich Ins. Co.*, 789 So. 2d 368 (Fla. 2d DCA 2001); *Weesner v. United Servs. Auto. Ass'n*, 711 So. 2d 1192, 1193 (Fla. 5th DCA 1998); *citing Tres v. Royal Surplus Lines Ins. Co.*, 705 So. 2d 643 (Fla. 3d DCA 1998). Here, those obligations were satisfied and Monasterio's attempt to suggest otherwise falls flat.

    **2.** **Monasterio's Attempt to Suggest that the Rejection Was Flawed Because It was Not on a Form Approved by the OIR is Inapplicable Given Monasterio's Concession and the Argument Wholly Misses the Point**

Despite conceding that the Period 2-3 Policy does not provide coverage for a specifically insured or identified motor vehicle, Monasterio contends that a written rejection on a form approved by Florida's OIR is required. [DE 38, p. 13]. Monasterio (or her counsel) needs to check the existing state of the law. In situations that do not concern a specifically insured auto, there is no obligation to obtain a written rejection. *See O'Brien v. State Farm Fire & Ca. Co.*, 999 So. 2d 1081 (Fla. 1st DCA 2009) (expressly rejecting claim that compliance with 627.727(1) was required where UM/UIM Coverage was made available at time of policy application for policy that did not insure specific vehicle); *see also Hooper v. Zurich Ins. Co.*, 789 So. 2d 368 (Fla. 2d DCA 2001); *Weesner v. United Servs. Auto. Ass'n*, 711 So. 2d 1192, 1193 (Fla. 5th DCA 1998); *citing Tres v. Royal Surplus Lines Ins. Co.*, 705 So. 2d 643 (Fla. 3d DCA 1998).

Here, as in *O'Brien*, the form, regardless of its approval or disapproval by the OIR, was provided by Progressive to the insured. ([DE 30-2], Progressive SOF, ¶ 12). The sum of $1 million was expressly indicated and made available. ([DE 30-2], Progressive SOF, ¶ 13). Nothing more than advising of availability was required from Progressive and, as admitted by Rasier, that obligation was satisfied. *Id.*

    **3.** **Monasterio's Attempt to Create a Factual Issue by Relying upon Inadmissible Hearsay that Conflicts with Rasier's Judicial Admissions is Misplaced**

Monasterio suggests that the rejection was somehow invalid because UM/UIM Coverage was inappropriately rejected. [DE 38, p. 13]. According to Monasterio, the rejection was inappropriate because it was signed by Amy Wagner who was allegedly employed by Uber rather than Rasier. [DE 38, pp. 13-14]. But, this argument again misses the point.

First, there is no suggestion or dispute either that: (i) the UM/UIM Selection Rejection Form both disclosed and indicated that $1 million in UM/UIM Coverage was available; or (ii) was provided to and disclosed to Rasier. ([DE 30-2, Progressive SOF, ¶¶ 12-13]). The insured admitted as much. *Id.* Rasier, the insured, literally admitted that 1 million of UM/UIM was offered, made available, and rejected by Rasier. ([DE 30-2], Progressive SOF, ¶ 13). There is simply no dispute that the named insured, who admitted as much, was notified that $1 million in UM/UIM Coverage was available and declined that coverage.

CASE NO.: 0:23-cv-61354

Second, Monasterio's only basis for suggesting that Wagner is not somehow related to or representative of the insured is predicated upon inadmissible hearsay. The general rule is that hearsay "cannot be considered on a motion for summary judgment." *Macuba v. Deboer*, 1193 F.3d 1316, 1322-23 (11th Cir. 1999); *Doe v. Carnival Corp.*, No. 19-24766-Civ-Williams, 2021 U.S. Dist. LEXIS 119070, *7 (S.D. Fla. 2021)(Torres, Mag. J.). Here, despite the fact that Rasier admitted Wagner's position, Monasterio relies upon a LinkedIn profile to oppose summary judgment. Such in admissible hearsay cannot and should not be considered where, as here, it is both irrelevant and conclusively refuted by the insured's own admissions.

## CONCLUSION

Monasterio has opposed Progressive's Motion for Summary Judgment [DE 30], by relying upon arguments that cannot be reconciled with the TNC Statute's express statutory language, with existing precedent, or with anything resembling admissible evidence. The Florida Legislature expressly adopted, as part of the TNC Statute, Florida's existing UM/UIM Statute, a statute that expressly authorized insureds to reject, reduce, and carriers to therefor not provide, UM/UIM Coverage in thier policies. That is what occurred here.

Ultimately, Monasterio has invited this Court to displace the Florida Legislature in a misguided attempt to correct a perceived wrong. But, there is nothing to correct. Florida, quite simply, does not require drivers to maintain UM/UIM Coverage, Florida's UM/UIM Statute does not require such coverage, and Florida's TNC Statute, by expressly adopting Florida's UM/UIM Statute, does not either. Stated differently, there is no mandate for carriers that write policies for TNC Companies to afford UM/UIM Coverage.

Progressive admittedly issued the Period 2-3 Policy to Rasier. That policy does not provide UM/UIM Coverage. Rasier did not pay for it, and even before that policy was issued, as part of the application process, Progressive offered, and Rasier admitted, that it was given the opportunity to obtain, but rejected, UM/UIM Coverage.

Put simply, there is no mandate, coverage was rejected, and nothing contained within Monasterio's response merits a different result; Progressive is entitled to summary judgment in its favor.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

CASE NO.: 0:23-cv-61354

Dated: February 22, 2024							Respectfully submitted,

							/s/ Patrick K. Dahl
							**Patrick K. Dahl, Esquire (084109)**
							pdahl@morganakins.com
							Florida Bar No. 084109
							**MORGAN & AKINS, PLLC**
							*Attorneys for Progressive Express Insurance Company*
							501 E. Las Olas Boulevard
							Suite 300
							Ft. Lauderdale, FL 33301
							Phone: (754) 255-3010
							Fax: (215) 600-1303

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system on February 22, 2024, and the foregoing document is being served this day on all counsel or parties of record on the Service List below, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

				/s/ Patrick K Dahl
				Patrick K. Dahl, Esquire