UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:23-cv-61354

PROGRESSIVE EXPRESS INSURANCE COMPANY,

    Plaintiff,

vs.

RASIER-DC, LLC, a foreign limited liability company; UBER TECHNOLOGIES, INC., a foreign corporation; and KARINA MONASTERIO, individually,

    Defendants.
_____/

## PROGRESSIVE'S REPLY STATEMENT OF MATERIAL FACTS

Plaintiff, Progressive Express Insurance Company ("Progressive"), by and through its attorneys, Morgan & Akins, PLLC, pursuant to and in accordance with Local Rule 56.1 of the Local Rules for the United States District Court for the Southern District of Florida, submits this "Reply Statement of Material Facts," for consideration in connection with its contemporaneously filed "Progressive's Reply in Support of Motion for Summary Judgment." In support thereof, Progressive states as follows:

## REPLY STAEMENT OF MATERIAL FACTS

38. Disputed. The "House of Representatives Final Bill Analysis" (the "Analysis") sets forth only a statement concerning 'insurance requirements,' generally, without any analysis or discussion of intent. In particular, the only statement concerning UM/UIM coverage is a single bullet point referencing "uninsured and underinsured vehicle coverage." ([DE 38-3, p. 5], Analysis). That is followed by a specific notation, footnote 17, that indicates and references Fla. Stat. § 627.727, a statute that does not mandate coverage, but allows for such coverage to be rejected. ([DE 38-3, p. 5, n. 17); *see also* Fla. Stat. 627.727(1); Fla. Stat. 627.727(2); *Brown-Peterkin v. Williamson*, 307 So. 2d 45 (Fla. 4th DCA 2020) (acknowledging the ability, under the statute, to reject or obtain lower UM/UIM limits); *Geico Indem. Co. v. Perez*, 260 So. 3d 342 (Fla.

3rd DCA 2018); *Hooper v. Zurich Ins. Co.*, 789 So. 2d 368 (Fla. 2d DCA 2001); *Weesner v. United Servs. Auto. Ass'n*, 711 So. 2d 1192, 1193 (Fla. 5th DCA 1998); *citing Tres v. Royal Surplus Lines Ins. Co.*, 705 So. 2d 643 (Fla. 3d DCA 1998).

39. Disputed. The statute, not the Analysis, dictates legislative intent. The Florida TNC Statute, rather than intending that certain insurers be permitted to exclude coverage under personal auto policies, specifically provides that an insurer <u>may</u> exclude such coverage.

40. Disputed. The statement 'failed to truthfully advise TNC drivers that they had attempted to reject UM/UIM coverage," implies that a duty or obligation existed to notify TNC drivers of what coverage had been rejected. In contrast, the statute expressly provides that the TNC must disclose "the insurance coverage, including the types of coverage and the limits for each coverage, <u>which the TNC provides</u> while the TNC driver uses a TNC vehicle in connection with the TNC's digital network." Fla. Stat. § 627.748(8)(a)(1.) (emphasis added). There is no obligation in the statute to disclose coverage that was rejected or not in place. *Id.*

41. Disputed. Defendant, Karina Monasterio, downloaded the Uber App to operate as a partner-driver in January or February, 2022. ([DE 30-3], K. Monasterio Dep., p. 80:22-25). As part of that process to operate as a partner driver, she was required to acknowledge and sign off on agreements before operating. ([DE 30-3], K. Monasterio Dep., pp. 81:1-5; 89:4-8). Those agreements specifically included the "Platform Access Agreement." ([DE 30-3], K. Monsterio Dep., p. 81:22-82:19; [DE 30-4], Platform Access Agreement). The Platform Access Agreement that Monasterio signed and executed specifically provided that:

> 3.5 Uber Maintained Insurance. We may, in our sole discretion, choose to maintain auto insurance related to your Rides, but we are not required to provide you with any specific coverage for loss to you or your vehicle, unless we specifically describe it in an addendum to this PAA. We can change, reduce or cancel insurance that is maintained by us, if any, at any time without notice to you or authorization from you or authorization from you.

([DE 30-3], K. Monasterio Dep., p. 82:24-83:10; [DE 30-4], Platform Access Agreement). Monasterio acknowledged that 'addendum to the PAA' addressed available insurance coverage to her in Florida. ([DE 30-3], K. Monasterio Dep., p. 83:11-21; [DE 30-5], P2P Service Only Addendum – City Addendum, Florida). The 'addendum to the PAA,' as acknowledged by Monasterio, provided, in pertinent part, as follows:

> Beginning when a User request for transportation has been accepted within the Uber application and ending when the last requesting User departs from your vehicle, a trip is ended, or a trip is cancelled, whichever is later, Company maintains primary automobile liability insurance in the amount of $1,000,000 for death, bodily injury and property damage. In addition, during this period Company maintains Medical Payments coverage in the amount of $5,000 per insured. If a driver holds Comprehensive and Collision coverage on his/her personal auto policy, then Company also maintains coverage for physical damage to the vehicle with a $2,500 deductible.

([DE 30-3], K. Monasterio Dep., p. 83:11-21; [DE 30-5], P2P Service Only Addendum – City Addendum, Florida).As Monasterio acknowledged, neither the Platform Access Agreement, nor the operative addendum, mention or suggest that UM/UIM Coverage would be provided. ([DE 30-3], K. Monasterio Dep., p. 87:19-24; [DE 30-4], Platform Access Agreement; [DE 30-5], P2P Service Only Addendum – City Addendum, Florida). At some point, Monasterio claims she looked at the Uber App and saw a "Certificate of Insurance." ([DE 30-3], K. Monasterio Dep., p. 90:10-18; Cert. of Insurance [DE 12-4, p. 5]). That document disclosed insurance coverage available, but did not contain the words "uninsured/underinsured motorist" anywhere. ([DE 30-3], K. Monasterio Dep., p. 90:19-21; [DE 12-4, p. 5] Cert. of Insurance).

42. Disputed. Progressive adopts and incorporates by reference its responses to paragraphs 40 and 41 as and for its response to and for the basis of its dispute for paragraph 42 as though fully set forth herein.

43. Disputed. Monasterio only reads a little English. ([DE 30-3], K. Monasterio Dep., p. 14:3-4). She requires assistance in translating documents from English to Spanish. ([DE 30-3], K. Monasterio Dep., p. 15:12-15). Her belief was not based on any statement or document but, as she expressly conceded, it was based on her assumption that coverage was included. ([DE 30-3, p. 92:22-24). Monasterio expressly acknowledged that the disclosure she allegedly reviewed did not specify that UM/UIM coverage was being provided. ([DE 30-3, p. 15-18).

Dated: February 22, 2024                    Respectfully submitted,

*/s/ Patrick K. Dahl*
**Patrick K. Dahl, Esquire (084109)**
pdahl@morganakins.com
Florida Bar No. 084109
**MORGAN & AKINS, PLLC**
*Attorneys for Progressive Express Insurance Company*
501 E. Las Olas Boulevard
Suite 300
Ft. Lauderdale, FL 33301
Phone: (754) 255-3010
Fax: (215) 600-1303

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system on February 22, 2024, and the foregoing document is being served this day on all counsel or parties of record on the Service List below, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

    /s/ Patrick K Dahl
Patrick K. Dahl, Esquire