UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-61354-CV-MIDDLEBROOKS

PROGRESSIVE EXPRESS
INSURANCE COMPANY,

    Plaintiff,

v.

RASIER-DC, LLC, UBER TECHNOLOGIES,
INC., and KARINA MONASTERIO,

    Defendants.
_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT

THIS CAUSE comes before the Court upon Progressive Express Insurance Company's ("Progressive") Motion for Summary Judgment against the Defendants Rasier-DC, LLC ("Rasier"), Uber Technologies, Inc. ("Uber"), Karina Monasterio, filed on January 25, 2024. (DE 30). This is a diversity action in which Progressive is seeking declaratory judgment clarifying Progressive's rights, duties, and obligations concerning uninsured and underinsured motor vehicle ("UM/UIM") coverage. (DE 12). Ms. Monasterio filed a Crossclaim against Uber and Rasier and Counterclaim against Progressive seeking one count of declaratory judgment on the same statutory question. (DE 22). Ms. Monasterio did not file a Cross-Motion for Summary Judgment.

**I.    FACTS**

Progressive filed a Statement of Material Facts, on January 25, 2024. (DE 30-2). Ms. Monasterio filed a Response to the Statement of Facts on February 15, 2024, disputing some of Progressive's statements of fact and providing additional facts. (DE 38-1). The following facts are undisputed by either party.

Rasier operates a Transportation Network Company ("TNC") in Florida. (DE 30-2 at ¶1); (DE 38-10 at ¶1). On March 1, 2022, Progressive issued a TNC Commercial Auto Policy, Policy Number 06250110-8 ("the Period Policy") to Rasier as a named insured. (DE 30-2 at ¶2); (DE 38-10 at ¶2). Uber was an additional insured under the Period Policy. (DE 30-2 at ¶3); (DE 38-10 at ¶3). The Period Policy states in relevant part that "if you pay the premium for this coverage, we will pay damages, other than punitive or exemplary damages, that an insured is legally entitled to recover from the owner or operator of an uninsured auto because of bodily injury." (DE 30-2 at ¶5); (DE 38-10 at ¶5). The term "insured auto" is defined in the Period Policy as "any auto while being used by a TNC driver, but only while engaged in providing a prearranged service utilizing the ride-share application." (DE 30-2 at ¶7); (DE 38-10 at ¶7). The Period Policy also includes in the definition of who is the "Insured" "any TNC driver operating an insured auto who has entered into a contract with you to provide covered TNC operations via the ride-share application and whose contract was in force at the time of the subject accident or loss." (DE 30-2 at ¶9); (DE 38-10 at ¶9). Progressive attaches the UM/UIM Form which contains the option to "reject all Uninsured Motorist Coverage." (DE 30-2 at ¶12); (DE 38-10 at ¶12); (DE 12-3). The Commercial Auto Insurance Coverage Summary for the Period Policy states that the Uninsured Motorist Coverage was "Rejected." (DE 30-2 at ¶16); (DE 38-10 at ¶16); (DE 12-2).

Around February 2022, Defendant Karina Monastero downloaded the Uber App to become a partner-driver. (DE 30-2 at ¶18); (DE 38-10 at ¶18). As part of the required process to become a partner driver, she acknowledged and signed the Platform Access Agreement, which stated in relevant part that Uber can "change, reduce, or cancel insurance that is maintained by [Uber], if any, at any time without notice to your or authorization from you." (DE 30-2 at ¶21); (DE 38-10 at ¶21).

On May 6, 2022, Ms. Monasterio logged into the "Uber" ride share application and accepted a request on the Uber App to provide a ride. (DE 30-2 at ¶28); (DE 38-10 at ¶28). Ms. Monasterio was driving a 2022 Honda which she owned. (DE 30-2 at ¶27); (DE 38-10 at ¶27). Ms. Monasterio's 2022 Honda was not specifically identified in the Period Policy. (DE 30-2 at ¶28); (DE 38-10 at ¶28). At around 10:45 a.m., Ms. Monasterio picked up a passenger as part of a pre-arranged ride at the Hollywood-Fort Lauderdale Airport. (DE 30-2 at ¶30); (DE 38-10 at ¶30). During this pre-arranged ride, Ms. Monasterio's car was struck by Michael Israel, a driver who lost control of his vehicle, spun through three lanes of traffic, and collided with Ms. Monasterio's vehicle. (DE 30-2 at ¶31); (DE 38-10 at ¶32). As a result of this incident, Ms. Monasterio contends that she sustained significant bodily injuries. (DE 30-2 at ¶32); (DE 38-10 at ¶32). Michael Israel was underinsured at the time of the accident. (DE 12-4 at ¶14).

On August 17, 2022, Ms. Monasterio filed a lawsuit in the Seventeenth Judicial Circuit in and for Broward County, Florida (*Monasterio v. Uber Technologies Inc.*, Case No. CACE-22-0120164, hereafter the "State Lawsuit"). In the State Lawsuit, Ms. Monasterio asserted claims relating to her alleged entitlement to UM/UIM benefits pursuant to the Period Policy. The State Lawsuit was removed to this Court and voluntarily dismissed without prejudice by Ms. Monasterio on April 28, 2023. (*Monasterio v. Uber Technologies Inc.*, Case No. 22-cv-61795, DE 34; DE 35). Progressive subsequently filed this action against Defendants Uber, Rasier, and Karina Monasterio on July 17, 2023, alleging four counts for declaratory judgment, two in the alternative. (DE 1). On September 15, 2022, Ms. Monasterio filed her Crossclaim against Uber and Rasier and Counterclaim against Progressive. (DE 22). Progressive has now represented to this Court that the dismissal of the underlying State Lawsuit was a result of an "express agreement" between the Parties "to resolve the disputed coverage question, via the present declaratory judgment action,

3

prior to litigating the more extensive, costly (and potentially unnecessary), medical/ damages component of an uninsured motorist claim." (DE 50 at 6). "Ms. Monasterio "can, and as reflected in the parties' agreement, will re-file and continue to seek uninsured motorist benefits under the policy." (*Id.*).[1]

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material for the purposes of summary judgment only if it 'might affect the outcome of the suit under the governing law.'" *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant. For factual issues to be considered genuine, they must have a real basis in the record." *Ellis v. England*, 432 F.3d 1321, 1325–26 (11th Cir. 2005) (citation omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge at summary judgment. Thus, [the Court] do[es] not determine the truth of the matter, but instead decide[s] only whether there is a genuine issue for trial." *Barnett v. PA Consulting Group, Inc.*, 715 F.3d 354, 358 (D.C. Cir. 2013) (citation omitted).

Under the summary judgment standard, the moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the

---

[1] Having initially had concerns about whether Progressive's Complaint for declaratory judgment still presented a live case in controversy (See my Order Requiring Supplemental Briefing at DE 49), I am now satisfied that the Parties have subsequently represented (DE 50; DE 51) that there is still sufficient controversy between the insurer and the injured person such that a declaratory judgment is permissible. *GTE Directories Publishing Corp. v. Trimen Am.*, 67 F.3d 1563, 1569 (11th Cir. 1995).

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. If the non-moving party fails to "establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,]" summary judgment is warranted. *Id.* at 322. The party moving for summary judgment bears the burden of establishing that there is insufficient evidence to support the non-moving party's case. *Id.* at 325. Moreover, "[t]he court must view all evidence in the light most favorable to the non-movant and must resolve all reasonable doubts about the facts in favor of the non-movant." *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.*, 894 F.2d 1555, 1557–58 (11th Cir. 1990) (citation omitted).

### III. DISCUSSION

Progressive brings this suit for declaratory judgment against Defendants Uber, Rasier, and Ms. Monasterio. However, Defendants Uber and Rasier do not defend against Progressive's Motion for Summary Judgment. Only Ms. Monasterio filed a Response in Opposition to the Motion for Summary Judgment. (DE 38). Uber and Rasier filed a Reply in Support of Progressive's Motion for Summary Judgment (DE 42) and filed a motion to join Progressive's Reply to Statement of Material Facts (DE 43).

**A. Florida's Statutory Scheme Governing Insurance Coverage for Ride Share Companies.**

Florida passed a TNC Statute that went into effect on January 1, 2022. Fla. Stat. §627.748 ("TNC Act"). The Parties have opposite views of what insurance Uber and Rasier were required

to maintain by this new Florida law. The TNC Act is a comprehensive legislation that aims to bring some uniformity to various laws applicable to ride share applications. The TNC Act provides what type of digital advertising devices can be used, the necessary requirements to become a driver, that drivers are independent contractors not employees under certain conditions, and much more. For our purposes[2], the TNC Act provides that

> "the following automobile insurance requirements apply while a TNC driver is engaged in a prearranged ride:
>
> 1) Automobile insurance that provides:
>    a. A primary automobile insurance liability coverage of at least $1 million for death, bodily injury, and property damage;
>
>    b. Personal injury protection benefits that meet the minimum coverage amounts required of a limousine under ss 627.730-627.7405; and
>
>    c. Uninsured and underinsured vehicle coverage as required by s.627.727."

Fla. Stat. § 627.748(7)(c).

Thus, according to the statutory language set forth above, Uber/Rasier, as a ride share company, was obligated to maintain underinsured vehicle coverage "as required by Fla Stat. § 627.727" (hereafter, "Florida's UM/UIM Statute") which generally governs the provision of uninsured and underinsured vehicle coverage for all Florida drivers. How to grapple with the interplay between the TNC Act and Florida's UM/UIM Statute is a matter of first impression.

---

[2] The Parties do not dispute that Ms. Monasterio was engaged in a prearranged ride and this is therefore that this section of the TNC Act provides the applicable insurance requirements. (DE 30-2 at ¶31); (DE 38-10 at ¶31).

### A. Subsection (1) of the Florida UM/UIM Statute Only Mandates UM/UIM Coverage for Policies Issued with Respect to Specifically Insured or Identified Vehicles.

Ms. Monasterio urges the Court to interpret the two statutes "harmoniously" and conclude that the text of the UM/UIM *mandates* UM/UIM insurance and then just invokes the Florida UM/UIM Statute in a general sense. (DE 38 at 10). However, the text of the TNC Act is clear: the "uninsured and underinsured vehicle coverage" that applied to a TNC driver engaged in a prearranged ride is only "as required by s.627.727." There is no other requirement for UM/UIM insurance in the text of the TNC Act. Therefore, the question before me is whether a TNC is obligated to procure UM/UIM coverage, given that the TNC Act appears intended to require that all TNC drivers engaged in pre-arranged rides have UM/UIM insurance, while the referenced general Florida UM/UIM Statute would not appear to cover such policies and authorizes insurance holders to reject such coverage.

In pertinent part, the Florida UM/UIM statute requires that:

> (1) **No motor vehicle liability insurance policy which provides bodily injury liability coverage shall be delivered or issued for delivery in this state with respect to any specifically insured or identified motor vehicle registered or principally garaged in this state unless uninsured motor vehicle coverage is provided therein...** However, the coverage required under this section is not applicable when, or to the extent that, an insured named in the policy makes a written rejection of the coverage on behalf of all insureds under the policy."

Fla Stat. 627.727(1) (emphasis added). Florida courts have already interpreted that Subsection (1) of the Florida UM/UIM Statute "limits the applicability of the uninsured motorist requirements to liability policies covering specifically insured or identified motor vehicles." *Hooper v. Zurich Ins. Co.*, 789 So. 2d 368, 369 (Fla. Dist. Ct. App. 2001).

7

The Parties state, and Ms. Monasterio readily concedes, that the Period Policy "is not issued for specifically insured or identified vehicles." (DE 38 at 10; DE 30-1 at 14). The Period Policy does not identify any specific vehicle nor is Ms. Monasterio's vehicle specifically identified. (DE 30-2 at ¶28); (DE 38-10 at ¶28). As Subsection (1) is therefore not applicable to the Period Policy, Ms. Monasterio cannot point to any text in the Florida UM/UIM Statute that would require coverage for her vehicle during the May 6, 2022, incident. Her argument that Subsection (1) of the Florida UM/UIM Statute is the only subsection to limit its applicability to specifically insured or identified motor vehicles, does undermine the limitation nor in and of itself create language that mandates UM/UIM insurance for all other types of insurance policies.

However, Ms. Monasterio urges this Court to recognize the result that follows. Subsection (1) of the Florida UM/UIM Statute only requires UM/UIM coverage for "specifically insured or identified vehicles." The Period Policy was written to cover "any auto while being used by a TNC driver, but only while engaged in providing a prearranged service utilizing the ride-share application…" (DE 12-1). It is likely that most TNC policies will be written similarly and it would be virtually impossible for any TNC to possibly identify each vehicle in the written policy. Therefore, it is further likely that no TNC driver or vehicle would ever be specifically insured or identified by the TNC's insurance policy, and as a result, never meet the condition precedent for Subsection (1) of the Florida UM/UIM Statute. By referencing, the Florida UM/UIM Statute, the TNC Act makes the requirement for UM/UIM coverage meaningless for TNC insurance policies.

I agree with Ms. Monasterio that this interpretation might be counter to the Florida Legislature's intent when they drafted the TNC Act. Ms. Monasterio attaches the House of representatives Final Bill Analysis for the TNC Act, where the legislative history of the bill shows that former drafts of the law did not include the reference to the Florida UM/UIM Statute and state

8

more simply as a requirement "[u]ninsured and underinsured vehicle coverage," end stop. Transportation Network Companies Act of 2017, Fla. H.B. 221, Fla S.B. 340 "House of Representatives Final Bill Analysis," p.5 (May 11, 2017). From this, Ms. Monasterio reasons that the intent was to mandate UM/UIM insurance. That is quite evident.

Notwithstanding the legislative intent however, my inquiry must focus on the language of the statute in its final form, and the statute references the Florida UM/UIM Statute in its entirety. The TNC Act only mandates UM/UIM insurance as required by the Florida UM/UIM Statute and Subsection (1) of the UM/UIM only requires that policies that specifically insure vehicles provide such coverage. I believe this is the result that the final text of the TNC Act requires. *Belanger v. Salvation Army*, 556 F.3d 1153, 1155 (11th Cir. 2009) ("When the statute is clear and unambiguous, courts will not look behind the statute's plain language for legislative intent or resort to rules of statutory construction to ascertain intent.").

Interpretation of the TNC Acts' reference to the Florida UM/UIM Statute is an issue of first impression and there is no controlling law. However, a state appeals court, when faced with an almost identical issue reached the same conclusion that I now reach with respect to the Florida statutory scheme. Louisiana's Fourth Circuit Court of Appeal interpreted Louisiana's parallel TNC statute, which included the requirement that TNCs shall maintain primary insurance for its drivers that shall "include uninsured and underinsured motorist coverage to the extent required by LA. R.S. 22:1295." *Jean v. James River Ins. Co.*, 274 So. 3d 43, 46, writ denied, 2019-0041 (La. App. 4th Cir. May 29, 2019 at *1). The State Court of Appeals found that by textually referencing a statute in its entirety, the Louisiana TNC statute also included the option to waive the coverage as permitted by the referenced statute because the referenced statute must be read *in para materei*. *Id.*

There is no textual ambiguity that the TNC Act requires UM/UIM coverage only "as required by the [Florida UM/UIM Statute]." Subsection (1) of the Florida UM/UIM Statute only mandates that a motor vehicle policy which provides coverage for "any specifically insured or identified motor vehicle" cannot be delivered or issued "unless uninsured motor vehicle coverage is provided[.]" The Parties agree that Ms. Monasterio's car was not specifically insured or identified in the Period Policy. The Period Policy therefore was not mandated to provide UM/UIM coverage. Progressive has established that it is entitled to summary judgment on the question of whether the Period Policy was statutorily mandated to provide UM/UIM insurance to Ms. Monasterio.[3]

### B. Progressive Made Available UM/UIM Coverage as Required by Subsection (2) of the Florida UM/UIM Act.

Having decided that the TNC Act references the Florida UM/UIM Statute in its entirety, I turn to Subsection (2) of the Florida UM/UIM Statute. Subsection (2) states:

> "The limits of uninsured motorist coverage shall be not less than the limits of bodily injury liability insurance purchased by the named insured, or such lower limit complying with the rating plan of the company as may be selected by the named insured. The limits set forth in this subsection, and the provisions of subsection (1) which require uninsured motorist coverage to be provided in every motor vehicle policy delivered or issued for delivery in this state, do not apply to any policy which does not provide primary liability insurance that includes coverage for liabilities arising from the maintenance, operation, or use of a specifically insured motor vehicle. **However, an insurer issuing such a policy shall make**

---

[3] The Parties devote substantial briefing to the issue of whether the UM/UIM insurance coverage was *properly* rejected under Subsection (1) of the Florida UM/UIM Statute. Subsection (1) states that "coverage required under this section is not applicable when… an insured named in the policy makes a written rejection of the coverage on behalf of all insureds under the policy." The Parties dispute the form of the written rejection and whether an authorized individual made the rejection. However, having already found that Subsection (1) does not apply to the Period Policy, I do not need to reach these arguments. The validity of the rejection only matters if "the coverage required under this section" applied to the Period Policy, which it does not.

10

> **available as a part of the application for such policy, and at the written request of an insured, limits up to the bodily injury liability limits contained in such policy or $1 million, whichever is less."**

Fla. Stat. §627.727 (2) (emphasis added).

The requirement that an insurer make certain coverage available appears to apply where the "provisions of subsection (1) …. do not apply[.]" The Parties' briefing does not devote much attention to this section of the statute. In fact, Ms. Monasterio does not include it in her brief at all other than to acknowledge the statutory language. (DE 38 at 9). However, Progressive represents that this Subsection applies to them and "require[s] that the applicant be notified of the availability of UM/UIM coverage. (DE 30-1 at 14). Progressive asks this Court to declare that Progressive has met its obligations under Subsection (2) of the Florida UM/UIM Statute in offering UM/UIM coverage and that the Period Policy as accepted does not provide UM/UIM coverage.

The Period Policy does offer UM/UIM Coverage and states the following under the section heading "Part III – Uninsured Motorist":

> Subject to the Limits of Liability, if you pay the premium for this coverage, we will pay damages, other than punitive or exemplary damages, that an insured is legally entitled to recover *from the owner or operator of an uninsured* because of bodily injury… caused by an accident occurring while the TNC driver is engaged in providing a prearranged service…

(DE 30-2 at ¶9); (DE 38-10 at ¶9). The Parties do not dispute that this language exists in the Period Policy. Progressive therefore has met its obligations under Subsection (2) of the Florida UM/UIM Statute.

As for whether the Period Policy includes UM/UIM coverage, the question is whether this premium was ever paid. Progressive states in its Statement of Material Facts that "Rasier, the named insured, did not pay the required premium for UM/UIM Coverage." (DE 30-2 at ¶10). Ms.

Monasterio disputed this fact stating only that "when coverage is required by law in the state of Florida, failure to pay the applicable premium does not preclude an insurance company from providing the legally mandated coverage." (DE 38-1 at ¶10). Accordingly, while Ms. Monasterio disputes Progressive's statement, importantly, she does not appear to dispute the fact that Rasier did not pay the applicable premium. The text of the Period Policy is clear that UM/UIM insurance coverage is contingent on payment of the premium. There is no dispute that the premium was never paid by Rasier or Uber. This is further confirmed by the fact that the Commercial Auto Insurance Coverage Summary for the Period Policy states that the Uninsured Motorist Coverage was "Rejected." (DE 30-2 at ¶16); (DE 38-10 at ¶16); (DE 12-2). Progressive has established that it is entitled to summary judgment on the question of whether it has met the statutory requirements in Subsection (2) of the Florida UM/UIM Statute. Additionally, Progressive has established that the Period Policy does not provide UM/UIM insurance to any person or entity, including Defendants Uber, Rasier, or Ms. Monasterio.

Accordingly, it is **ORDERED AND ADJUDGED** that:

1) Progressive Express Insurance Company's Motion for Summary Judgment (DE 30) is **GRANTED.**

2) Final judgment will be entered by separate order.

**SIGNED** in Chambers at West Palm Beach, Florida, this 19 day of March, 2024.

Donald M. Middlebrooks
United States District Judge

cc:   Counsel of Record